UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>FAIRFIELD SENTRY LIMITED, *et al.*,<br><br>Debtors in Foreign Proceedings. | Chapter 15 Case<br><br>Case No. 10-13164 (CGM)<br><br>Jointly Administered |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>THEODOOR GGC AMSTERDAM, *et al.*,<br><br>Defendants. | Adv. Pro. No. 10-03496 (CGM)<br><br>Administratively Consolidated |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>ZURICH CAPITAL MARKETS COMPANY, *et al.*,<br><br>Defendants. | Adv. Pro. No. 10-03634 (CGM) |

**MEMORANDUM OF LAW IN SUPPORT OF EFG'S MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ................................................................................................................ 6

ARGUMENT .................................................................................................................... 9

    A.    EFG's Alleged Contacts with the Forum Are Insufficient to Establish  Jurisdiction
.................................................................................................................................. 10

        1.    Plaintiffs Fail to Plead a *Prima Facie* Case of Jurisdiction Over EFG and
Cannot Rely on Group Pleading to Circumvent Their Pleading Burden.. 10

        2.    The Fund's Investments with BLMIS Does Not Establish Jurisdiction
Over EFG ............................................................................................... 13

        3.    The Use of U.S. Currency and Designation of U.S. Accounts to Receive
Redemption Payments Do Not Establish Jurisdiction ............................. 16

        4.    Plaintiffs' Remaining Threadbare Conclusions Similarly Fail to Establish
That This Court Can Exercise Personal Jurisdiction Over EFG ............... 22

    B.    The Exercise of Personal Jurisdiction over EFG Would Be Unreasonable .......... 24

CONCLUSION ................................................................................................................. 26

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Al Rushaid v. Pictet & Cie*,
    68 N.E. 3d 1 (N.Y. 2016) .................................................................................................. 19

*Asahi Metal Indus. Co., Ltd. v. Superior Court*,
    480 U.S. 102 (1987) ............................................................................................ 15, 25, 26

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................................ 6

*Berdeaux v. OneCoin*,
    No. 19-CV-4074 (VEC), 2021 WL 4267693 (S.D.N.Y. Sept. 20, 2021) ................................ 12

*Bristol-Myers Squibb v. Superior Court of California*,
    137 S. Ct. 1773 (2017) ............................................................................................. 11, 16

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ...................................................................................................... 10

*Charles Schwab Corp. v. Bank of Am. Corp.*,
    883 F.3d 68 (2d Cir. 2018) ............................................................................................ 11

*Deitrick v. Gypsy Guitar Corp.*,
    No. 16 CIV. 616 (ER), 2016 WL 7494881 (S.D.N.Y. Dec. 28, 2016) .................................. 23

*Dennis v. JPMorgan Chase & Co.*,
    343 F. Supp. 3d 122 (S.D.N.Y. 2018) ............................................................................. 15

*Doe v. Delaware State Police*,
    939 F. Supp. 2d 313 (S.D.N.Y. 2013) ............................................................................. 24

*Fairfield Sentry Ltd. (In Liquidation), et al. v. Citco Glob. Custody NV, et al.*,
    Adv. Pro. No. 19-01122 (S.D.N.Y. Bankr. Nov. 26, 2019) ................................................ 22

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
    141 S. Ct. 1017 (2021) ............................................................................................. 16, 27

*Guo Jin v. EBI, Inc.*, No. 05-CV-4201 (NGG) (SMG),
　2008 WL 896192 (E.D.N.Y. Mar. 31, 2008) .................................................................. 22, 24

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
　466 U.S. 408 (1984) .......................................................................................................... 19

*Henkin v. Gibraltar Priv. Bank & Tr. Co.*,
　No. CV 16-5452, 2018 WL 557866 (E.D.N.Y. Jan. 22, 2018) ......................................... 15

*Hill v. HSBC Bank plc*,
　207 F.Supp.3d 333 (S.D.N.Y. 2016) ................................................................................ 18

*Hill v. HSBC Bank plc*,
　No. 14-CV-09745 (LTS), 2016 WL 4926199 (S.D.N.Y. Sept. 15, 2016) ............................ 21

*HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*,
　No. 20-CV-00967 (LJL), 2021 WL 918556 (S.D.N.Y. Mar. 10, 2021) .............................. 12

*In re Caisse*,
　568 B.R. 6 (Bankr. S.D.N.Y. 2017) .................................................................................. 22

*In re CIL Limited*,
　582 B.R. 46 (Bankr. S.D.N.Y. 2018) ................................................................................ 25

*In re Fairfield Sentry Ltd.*,
　627 B.R. 546 (Bankr. S.D.N.Y. 2021) ............................................................................ 3, 15

*In re Lyondell Chem. Co.*,
　543 B.R. 127 (Bankr. S.D.N.Y. 2016). ............................................................................. 10

*In re Magnetic Audiotape Antitrust Litig.*,
　334 F.3d 204 (2d Cir. 2003) .............................................................................................. 9

*In re Mexican Gov't Bonds Antitrust Litig.*,
　No. 18-CV-2830 (JPO), 2020 WL 7046837 (S.D.N.Y. Nov. 30, 2020) ............................. 16

*In re SSA Bonds Antitrust Litig.*,
　420 F. Supp. 3d 219 (S.D.N.Y. 2019) ............................................................................... 13

2

*In re Terrorist Attacks on September 11, 2001*,
    714 F.3d 659 (2d Cir. 2013)................................................................................................. 10

*Int'l Shoe v. Washington*,
    326 U.S. 310 (1945)............................................................................................................. 25

*J. McIntyre Mach., Ltd. v. Nicastro*,
    564 U.S. 873 (2011)............................................................................................................. 16

*Jazini v. Nissan Motor Co.*,
    148 F.3d 181 (2d Cir. 1998)................................................................................................. 23

*Johnson v. UBS AG*,
    No. 2:20-CV-00357-MCS-JC, 2020 WL 6826477 (C.D. Cal. Nov. 12, 2020) ...................... 23

*King County v. IKB Deutsche Industriebank AG*,
    769 F. Supp. 2d 309 (S.D.N.Y. 2011).............................................................................. 11, 12

*Lehigh Val. Indus., Inc. v. Birenbaum*,
    527 F.2d 87 (2d Cir. 1975)................................................................................................... 18

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
    732 F.3d 161 (2d Cir. 2013)............................................................................................ 20, 21

*Licci v. American Exp. Bank Ltd.*,
    704 F. Supp. 2d 403 (S.D.N.Y. 2010)............................................................................. 20, 23

*Mashreqbank PSC v. Ahmed Hamad Al Gosaibi & Bros. Co.*,
    12 N.E.3d 456 (N.Y. 2014).................................................................................................. 20

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
    84 F.3d 560 (2d Cir. 1996)........................................................................................ 11, 25, 26

*Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*,
    549 B.R. 56 (S.D.N.Y. 2016)............................................................................................... 10

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
    609 F.3d 30 (2d Cir. 2010).................................................................................................. 11

3

*Picard v. Fairfield Greenwich Group (In re Fairfield Sentry Ltd.)*,
   627 B.R. 546 (Bankr. S.D.N.Y. 2021) ............................................................................ 1, 2, 13

*Plunket v. Doyle*,
   No. 99–CV–11006, 2001 WL 175252 (S.D.N.Y. Feb. 22, 2001) ......................................... 24

*Porina v. Marward Shipping Co.*,
   No. 05 CIV. 5621(RPP), 2006 WL 2465819 (S.D.N.Y. Aug. 24, 2006) ............................... 25

*Powell v. Monarch Recovery Mgmt., Inc.*,
   No. 15-CV-2162 (MKB), 2016 WL 8711210 (E.D.N.Y. Jan. 22, 2016) ................................ 24

*Ritchie Capital Mgmt., L.L.C. v. JPMorgan Chase & Co.*,
   No. CV 14-4786 (DWF/FLN), 2017 WL 6403096 (D. Minn. Dec. 14, 2017) ........................ 20

*Rush v. Savchuk*,
   444 U.S. 320 (1980) ........................................................................................................ 9, 18

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   Adv. Pro. No. 11-02732 (SMB), 2016 WL 6900689 (Bankr. S.D.N.Y. Nov. 22,
   2016) ............................................................................................................................... 6, 16

*Shaffer v. Heitner*,
   433 U.S. 186 (1977) ............................................................................................................. 10

*Sonterra Capital Master Fund Ltd. v. Credit Suisse Grp. AG*,
   277 F. Supp. 3d 521 (S.D.N.Y. 2017) .................................................................................... 9

*Spiegel v. Schulman*,
   604 F.3d 72 (2d Cir. 2010) .................................................................................................. 27

*SPV Osus Ltd. v. UBS AG*,
   882 F.3d 333 (2d Cir. 2018) .......................................................................................... 15, 20

*Stratagem Dev. Corp. v. Heron Int'l N.V.*,
   153 F.R.D. 535 (S.D.N.Y. 1994) .......................................................................................... 11

*Sullivan v. Barclays PLC*, No. 13-CV-2811 (PKC),
   2017 WL 685570 (S.D.N.Y. Feb. 21, 2017) ......................................................................... 15

*Sunward Electronics, Inc. v. McDonald*,
  362 F.3d 17 (2d Cir. 2004) ........................................................................................ 9

*Tamam v. Fransabank Sal*,
  677 F. Supp. 2d 720 (S.D.N.Y. 2010) ................................................................. 19, 21

*Tera Group., Inc. v. Citigroup, Inc.*,
  No. 17-CV-4302 (RJS), 2018 WL 4732426 (S.D.N.Y. Sept. 28, 2018) ................................. 13

*Thorsen v. Sons of Norway*,
  996 F. Supp. 2d 143 (E.D.N.Y. 2014) .................................................................... 26

*To v. HSBC Holdings PLC*,
  No. 15-CV-3590-LTS-SN, 2017 WL 816136 (S.D.N.Y Mar. 1, 2017) *aff'd*, 700 F.
  App'x 66 (2d Cir. 2017) .............................................................................. 19, 21

*Vasquez v. Hong Kong & Shanghai Banking Corp., Ltd.*,
  477 F. Supp. 3d 241 (S.D.N.Y. 2020) ....................................................................... 21

*Walden v. Fiore*,
  571 U.S. 277 (2014) .................................................................................. *passim*

*Waldman v. Palestine Liberation Org.*,
  835 F.3d 317 (2d Cir. 2016) ............................................................................ 10

*World-Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980) .................................................................................... 25

## **Rules**

Federal Rule of Bankruptcy Procedure 7004(f) .......................................................... 10
Federal Rule of Civil Procedure 12(b)(2) ................................................................. 1

Defendant EFG Bank AG ("EFG")[1] submits this memorandum of law in support of its motion to dismiss the Fourth Amended Complaint ("Fourth Amended Complaint") filed by the liquidators for Fairfield Sentry Ltd. ("Sentry" or the "Fund") ("Plaintiffs") against EFG, Zurich Capital Markets Company ("Zurich Capital"), and approximately 20 other defendants (together with EFG and Zurich Capital, the "Defendants") pursuant to Federal Rule of Civil Procedure 12(b)(2).

## PRELIMINARY STATEMENT

Plaintiffs' only remaining claim against EFG in this action is one for knowing receipt under BVI law. That claim seeks to unwind redemption payments purportedly made by a foreign fund (Fairfield) to a foreign defendant (Zurich Capital), based on the foreign fund administrator's miscalculation of the value of Fairfield shares abroad. An unspecified portion of those payments, in turn, allegedly "*may* have" been paid to another foreign defendant (EFG). Fourth Amended Complaint (Aug. 11, 2021), Dkt. No. 313 ("ZCM Fourth Am. Compl.") ¶¶ 46, 251 (emphasis added).[2] The Court should dismiss EFG because Plaintiffs fall far short of establishing that this Court can exercise personal jurisdiction over it.

To start, the Plaintiffs do not assert any of the types of allegations this Court has found sufficient for the exercise of personal jurisdiction. *See, e.g.*, *Picard v. Fairfield Greenwich Group (In re Fairfield Sentry Ltd.)*, 627 B.R. 546, 568 (Bankr. S.D.N.Y. 2021) (Morris, J.) (outlining types of forum contacts giving rise to personal jurisdiction). Instead, the Fourth Amended Complaint—which spans almost eighty pages—expressly mentions EFG in only a *single*

---

[1]    EFG has been sued in this action under its former name, "EFG Private Bank SA." Undersigned counsel for EFG has been engaged in discussions with Plaintiffs' counsel to update the defendant name in this action.

[2]    Unless otherwise noted, references to "Dkt. No. ___" refer to filings on the docket of *Fairfield Sentry Ltd. (In Liquidation) v. Zurich Capital Markets Co. et al.*, Adv. Pro. No. 10-03634 (Bankr. S.D.N.Y.).

paragraph. *See* ZCM Fourth Am. Compl. ¶ 46. And, in that passing reference, Plaintiffs acknowledge that EFG is a Swiss-based corporate entity. Plaintiffs *nowhere* alleged EFG to have had a U.S. office or U.S. employees, to have signed relevant agreements in the U.S., to have represented to contract counterparties that it was located in the U.S., nor otherwise transacted business in the U.S. in relation to the redemptions at issue. *Compare Fairfield Greenwich Group,* 627 B.R. at 568 (outlining such U.S. touchpoints as basis for personal jurisdiction) *with* ZCM Fourth Am. Compl. ¶¶ 20–24, 46. Recognizing that they cannot—as they must—plead particularized jurisdictional allegations as to EFG specifically, Plaintiffs' theory for jurisdiction rests on a paltry set of conclusory allegations that impermissibly group EFG, Zurich Capital and the other Defendants together and cannot—even on a motion to dismiss—be credited.

Plaintiffs' conclusory allegations and impermissible group pleading cannot overcome what the Fourth Amended Complaint lays bare: every relevant aspect of the claims is foreign.[3]

- EFG is a foreign entity with its place of incorporation and registered address in Switzerland. *Id.* ¶ 46.

- Zurich Capital, as the initial transferee of the redemption payments allegedly transferred to EFG and the other Defendants, is a foreign entity with its place of incorporation and registered address in Ireland. *Id.* ¶ 32.

- Sentry is a BVI hedge fund that is now in liquidation in its home jurisdiction of the BVI. *Id.* ¶ 26.

- Zurich Capital was contractually due the redemptions under the Fund's Articles of Association (the "Articles"), corporate documents governed by BVI law. *See infra* p. 6.

- The Articles provide a BVI contractual right to redeem shares in the Fund at its Net Asset Value ("NAV"), and when the shares were redeemed, they were tendered to the Fund's Dutch administrator, Citco Fund Services. *See id.*

---

[3]    Tellingly, in other circumstances, Plaintiffs have readily characterized the relevant transfers as wholly foreign. *See* Plaintiffs' Appellants Opening Brief for Second-Round Appeal at 24, *Fairfield Sentry Ltd. v. Citibank NA London*, No. 19-cv-3911 (S.D.N.Y. July 21, 2021), Dkt. No. 440.

- Citco Fund Services is alleged to have calculated the NAV abroad in the Netherlands. *See infra* pp. 4, 16.

- Plaintiffs allege no relevant activities by EFG in or directed at the United States. *See* ZCM Fourth Am. Compl. ¶ 20–24.

Indeed, this foreign claim is only before this Court because Plaintiffs made a mistake of law more than a decade ago, reading the subscription agreement for the purchase of shares in the Fund as containing a New York forum selection clause for the instant BVI claim against EFG.[4] This Court rejected that theory because the knowing receipt claim is for *redemptions* and does not arise out of the *subscription* agreements,[5] leaving Plaintiffs—now on their fifth complaint—grasping to justify the expense of litigating against EFG in New York, a forum with no connection to the redemption transaction at issue.[6]

In fact, Plaintiffs have hardly shown that they should be litigating against EFG at all in this action. As a threshold matter, the Fourth Amended Complaint does not even plead that EFG received subsequent payments from Zurich Capital, only that it—along with other Defendants—"*may*" have received some unspecified portion of those payments. ZCM Fourth Am. Compl. ¶¶ 46, 251 (emphasis added).

The Plaintiffs appear to advance two principal bases for personal jurisdiction, neither of

---

[4]    EFG is not alleged to have been a party to that subscription agreement but Plaintiffs have asserted that the subscription agreements' forum selection clause nonetheless applies to EFG based on a provision of the agreement by which Zurich Capital, if "subscribing as trustee, agent, representative or nominee for another person . . . agrees that the representations and agreements herein are made by [Zurich Capital] with respect to itself and the Beneficial Shareholder." ZCM Fourth Am. Compl. ¶ 24.

[5]    *In re Fairfield Sentry Ltd.* ("*Fairfield I*"), No. 10-13164 (SMB), 2018 WL 3756343, at *11 (Bankr. S.D.N.Y. Aug. 6, 2018) ("[T]he Privy Council held that the Subscription Agreement was irrelevant to actions to recover the inflated redemption payments.").

[6]    *See Fairfield Sentry Ltd. (In Liquidation) v. Theodoor GGC Amsterdam, et al.*, Adv. Pro. No. 10-03496, Dkt. No. 906 (Bankr. S.D.N.Y. July 28, 2016) Hr'g. Tr. at 11–14 ("THE COURT: It just sounds like you litigated these issues or you should litigate them in the BVI. I don't understand why they're here. . . . THE COURT: I understand that. But at some point you commenced these cases here . . . And the question is why you didn't commence them in the BVI?").

which satisfies the U.S. Constitution's minimum contacts test for exercising jurisdiction over EFG.

*First*, Plaintiffs argue that the minimum contacts requirement is satisfied because the Defendants—including EFG—knew that Zurich Capital was investing with the Fund and that the Fund was directly or indirectly investing its own money in Bernard L. Madoff Investment Securities LLC ("BLMIS").  But—as this Court has already recognized—this allegation is not jurisdictionally relevant to the claim at issue here, which turns on the *redemption* payments from the Fund and Citco Fund Services' supposed bad faith calculation of those payments in the Netherlands.[7]  The allegation also fails to establish minimum contacts because *Plaintiffs*—not EFG—placed the investment in BLMIS, and the Supreme Court has rejected the notion that a defendant's mere knowledge of a plaintiff's forum-contacts establishes personal jurisdiction in *Walden v. Fiore* 571 U.S. 277 (2014).

*Second*, Plaintiffs argue that minimum contacts is satisfied because, purportedly, "Zurich Capital and the Beneficial Shareholders . . . maintain[ed] bank accounts in the United States at Citibank NA, and in fact receiv[ed] Redemption Payments in those United States-based and/or New York-based accounts."  ZCM Fourth Am. Compl. ¶ 20.  But Plaintiffs' particularized allegations underscore the inadequacy of that conclusion:  it is *only* Zurich Capital that is alleged to have had a "Citibank NA" bank account into which Fairfield-related transfers were allegedly paid.  *Id.* ¶ 67.  EFG, by contrast, is not alleged to have any connection with that account, let alone received any transfers from that account.  Plaintiffs' improper attempt to lump EFG with the other Defendants together—without describing any basis for doing so—does not suffice for establishing personal jurisdiction over EFG under well-established precedent in this district.

Moreover, the location and nature of *Zurich Capital's* bank account do not bear on

---

[7]    *See Fairfield I*, 2018 WL 3756343, at *12.

jurisdiction over *EFG*.  And even if Plaintiffs' theory is that the payments at issue at some point were made through a U.S. correspondent bank account, the law in this Circuit is clear that a payment's transit through a U.S.-based correspondent account does not establish personal jurisdiction.  Foreign banks often maintain correspondent accounts denominated in dollars to facilitate the clearing of foreign dollar transactions.  These accounts are both common, because foreign banks cannot generally directly hold dollar accounts in their home countries, and essential to international commerce and to the economy because they facilitate clearance of more than a trillion dollars in transactions each day.  But making a payment in U.S. dollars, and facilitating that payment through a U.S. bank account, has been widely recognized in this Circuit not to give rise to personal jurisdiction; were it otherwise, virtually anyone in the world who does business in U.S. dollars would potentially be subject to personal jurisdiction in New York.

*Finally*, regardless of whether minimum contacts were satisfied, exercise of jurisdiction would be unreasonable under the circumstances and therefore impermissible.  The majority of relevant evidence on Plaintiffs' claim against EFG is overseas in the BVI or Switzerland.  The United States has little to no interest in adjudicating this foreign law claim between foreign parties for the recovery of purely foreign payments under a foreign law contract.  Plaintiffs' interest in litigating in this forum is, similarly, very low.  They have proffered no reason why the United States is more reasonable than their home jurisdiction of the BVI or in Switzerland, where EFG is located.  Finally, the burden on EFG in litigating in New York is significant.  The witnesses and evidence in this action are overseas and EFG has obligations under foreign secrecy and privacy laws.  Accordingly, discovery in these actions exposes EFG to risk of civil and criminal penalties in their home jurisdictions.

For these reasons, EFG respectfully submits that the Court should dismiss it from the action for lack of personal jurisdiction.

## BACKGROUND

EFG is purportedly a beneficial holder of an account held by Zurich Capital, which is alleged to have invested in Sentry, a "feeder fund" for BLMIS.[8]  ZCM Fourth Am. Compl. ¶¶ 2,3, 16.  The Fund, which is organized under BVI law, sold shares to foreign investors in accordance with its Articles.  To purchase shares in the Fund, certain investors were required to sign subscription agreements.  *Id.* ¶ 22.  The terms of their investments, including the redemption rights, were not governed by the subscription agreements, however, but by the Articles.  *See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 11-02732 (SMB), 2016 WL 6900689, at *15 (Bankr. S.D.N.Y. Nov. 22, 2016) ("[T]he Privy Council in Fairfield Sentry ruled that the redemptions were governed by the Articles of Association and BVI law.").  The Articles granted investors the right to redeem their shares at a price equal to the Fund's NAV, *id.*, which the Fund calculated based on the value of the Fund divided by its outstanding shares.  ZCM Fourth Am. Compl. ¶ 8.  The Funds' NAV was calculated by their administrator, Citco Fund Services (Europe) B.V. and its delegate Citco (Canada) Inc. (together, "Citco"), which issued NAV statements to shareholders on behalf of the Funds.  *Id.* ¶ 200.  Following a redemption request, the Funds were required to pay the redeeming shareholder an amount based on the NAV in return for the redemption of the shares.  In December 2008, BLMIS's massive fraud was revealed, and in

---

[8]       For purposes of this motion only, EFG takes all of the factual allegations—but not legal or boilerplate conclusions couched as factual allegations—in the Fourth Amended Complaint as true.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  EFG reserves all rights to contest any such factual allegations that are false or inaccurate at the appropriate procedural stage of this action, if necessary.

April 2009, the Fund entered liquidation proceedings before the BVI High Court of Justice, Commercial Division.  *Id.* ¶¶ 231–37.

Plaintiffs initiated this action in New York state court on August 13, 2010 and removed it to this Court on September 21, 2010.  The complaint named as defendants Zurich Capital, some of the Defendants, and 1,000 unnamed "beneficial owners."  Dkt. No. 1-2.  It sought recovery of redemption payments that Zurich Capital allegedly received from the Fund before December 2008 totaling $13.4 million.  *Id.*  That complaint was amended on September 21, 2010 to allege that Zurich Capital received redemption payments totaling $15.1 million between April 21, 2004 and August 14, 2006, directed to a Citibank NA bank account in New York.  Dkt. No. 4 ¶ 24.  With respect to EFG, it alleged: "Upon information and belief, Zurich may have paid to or credited some or all of the Redemptions Payments received by it to accounts of Beneficial Shareholders."  *Id.* ¶ 40.  Plaintiffs then amended the complaint for a third time on January 10, 2011, again on August 7, 2012, and yet again on August 11, 2021.[9]  In all its iterations, the Fourth Amended Complaint failed to plead any specific transfer received by EFG.

Now on their fifth attempt, the Plaintiffs have not advanced beyond their 2010 personal jurisdiction allegations about EFG.  *See* ZCM Fourth Am. Compl. ¶¶ 34–55, 65–67.  Indeed, the Fourth Amended Complaint continues to plead: "Upon information and belief, Zurich Capital *may have* paid some or all of the Redemption Payments it received to the Beneficial Shareholders."  *Id.* ¶ 251 (emphasis added).  Its "new" personal jurisdiction allegations, however, provide no further substance.  Plaintiffs have simply grouped EFG together with other Defendants under the catch-

---

[9]    The operative complaint is called the "Fourth Amended Complaint," but constitutes the fifth amendment following Plaintiffs' original filing of the case in state court on August 13, 2010.  *See* Compl., *Fairfield Sentry Limited v. Zurich Capital Markets Co. et al.*, No. 650315/2010 (Aug. 13, 2010), NYSCEF Doc. No. 4; Am. Compl. (Sept. 21, 2010), Dkt. No. 4; First Am. Compl. (Jan. 10, 2011), Dkt. No. 42; Second Corrected Am. Compl. (August 7, 2012), Dkt. No. 64; ZCM Fourth Am. Compl. (Aug. 11, 2021), Dkt. No. 313.

all definition "Beneficial Shareholders," *id.* ¶ 16, and asserted in a conclusory fashion that the

Beneficial Shareholders, along with Zurich Capital:

- "purposely availed themselves of the laws of the United States and the State of New York by" investing in the Funds. *Id.* ¶ 20.[10]

- "selected U.S. dollars as the currency" in which their alleged Sentry investments were denominated and otherwise "designated United States-based and/or New York-based bank accounts to receive their Redemption Payments from the Funds." *Id.*

- "knowingly accepted the rights, benefits, and privileges of conducting business and/or transactions in the United States and New York, derived significant revenue from New York, and maintained minimum contacts and/or general business contacts with the United States and New York in connection with the claim alleged herein." *Id.*

- consented to jurisdiction "by virtue of the legally binding and valid agreements and representations set forth in one or more agreements for the subscription of Shares that Zurich Capital entered into with Sentry."[11] *Id.* ¶ 21.

Tellingly, the *only* reference to EFG in the 79-page Fourth Amended Complaint is

contained in a single paragraph that makes no mention of any U.S. contact or connection by EFG

whatsoever:

> "Based on Sentry records, some or all of the Redemption Payments made to Zurich Capital may have been paid to an account holder or holders associated with the Beneficial Shareholder, EFG Private Bank SA. Upon information and belief, EFG Private Bank SA is a corporate entity organized under the laws of Switzerland and has its registered address at Quai du Seujet 24, P.O. Box 2391, 1211 Geneva 2, Switzerland. *Id.* ¶ 46.

None of the conclusory and general statements, individually or collectively, comes close

to alleging personal jurisdiction over EFG. And beyond these boilerplate assertions that Plaintiffs

seek to apply to all the Defendants, Plaintiffs allege no other forum contacts by EFG.

---

[10]     Plaintiffs also add a new allegation, in a footnote to an exhibit, that Citco, the Fund's administrator, maintained a correspondent account. *See* ZCM Fourth Am. Compl., Ex. A ("Whether or not Redemption Payments were ultimately directed to bank accounts in the United States, all Redemption Payments from Sentry went through a correspondent bank account that Sentry's administrator [Citco] maintained in the United States.").

[11]     As discussed *supra*, this basis for personal jurisdiction was rejected in *Fairfield I.*

## ARGUMENT

As this Court previously held, the Defendants—including EFG—did not consent to *in personam* jurisdiction in this Court. *See Fairfield I*, 2018 WL 3756343, at \*12. Accordingly, Plaintiffs must identify some basis other than consent to carry their "burden of showing that the court has jurisdiction over the defendant." *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003). Plaintiffs must make this showing with respect to "each defendant," *Rush v. Savchuk*, 444 U.S. 320, 332 (1980), and "*each* claim asserted," *Sonterra Capital Master Fund Ltd. v. Credit Suisse Grp. AG*, 277 F. Supp. 3d 521, 586 (S.D.N.Y. 2017) (quoting *Sunward Electronics, Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004)) (emphasis in original).

Plaintiffs do not allege—and cannot allege—that the Court has general jurisdiction over EFG who is not "at home" in the United States, and so they must plead facts supporting the exercise of specific jurisdiction over EFG. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 760–62 (2014). To do so, Plaintiffs must assert "(1) that [EFG had] certain minimum contacts with the relevant forum, and (2) that the exercise of jurisdiction is reasonable in the circumstances." *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 674 (2d Cir. 2013) (internal quotation marks omitted).[12] The minimum contacts sufficient to support specific jurisdiction focus on "the relationship among the defendant, the forum, and the litigation," *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977), a relationship that "must arise out of contacts that the defendant *himself* creates with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quotation marks omitted and emphasis added). Plaintiffs have failed to make the requisite showings here.

---

[12] The federal jurisdictional analysis "closely resemble[s]" New York's long-arm statute and due process requirements, so the analyses are largely interchangeable. *Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 68 (S.D.N.Y. 2016). Under Federal Rule of Bankruptcy Procedure 7004(f), Plaintiffs can establish personal jurisdiction by demonstrating sufficient minimum contacts with the United States as a whole. *See In re Lyondell Chem. Co.*, 543 B.R. 127, 138 (Bankr. S.D.N.Y. 2016).

## A.  EFG's Alleged Contacts with the Forum Are Insufficient to Establish Jurisdiction

Plaintiffs neither allege "minimum contacts" sufficient to constitute a "substantial connection" between EFG and the United States giving rise to their claim, nor establish that EFG's conduct was "purposefully directed" toward the forum to support the exercise of specific personal jurisdiction. *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 335–338 (2d Cir. 2016). Moreover, Plaintiffs' only remaining claim—a claim for constructive trust arising from knowing receipt under BVI law—does not "arise out of or relate to" conduct in the United States. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985).

To the contrary, those redemption payments were indisputably made by a *foreign* fund through its *foreign* administrator pursuant to *foreign*-law governed contracts. *See* Fourth Am. Compl. ¶¶ 8, 200, 204. Meanwhile, Zurich Capital's alleged "suit-related conduct" —the knowing receipt of those redemptions from the Fund and Citco—fails to create "a substantial connection with the forum State" for *EFG*, especially where Plaintiffs fail to allege that EFG received subsequent payments or knew that Zurich Capital would invest in BLMIS. *Walden*, 571 U.S. at 284; *see Bristol-Myers Squibb v. Superior Court of California*, 137 S. Ct. 1773, 1781 (2017) (declining to exercise personal jurisdiction where "[w]hat is missing . . . is a connection between the forum and *the specific claims at issue*") (emphasis added). In the absence of this requisite connection, Plaintiffs strain to conjure relevant U.S. contacts sufficient to support jurisdiction. Their efforts fail.

### 1.  Plaintiffs Fail to Plead a *Prima Facie* Case of Jurisdiction over EFG and Cannot Rely on Group Pleading to Circumvent Their Pleading Burden

Plaintiffs fail to plead a *prima facie* case of jurisdiction or even make a "sufficient start" towards establishing jurisdiction over EFG. *Stratagem Dev. Corp. v. Heron Int'l N.V.*, 153 F.R.D.

10

535, 547 (S.D.N.Y. 1994).  On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction.  *See id.*; *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996).  "Such a showing entails making legally sufficient allegations of jurisdiction, including an averment of facts that, if credited[,] would suffice to establish jurisdiction over the defendant."  *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 81 (2d Cir. 2018) (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34–35 (2d Cir. 2010)).  Here, Plaintiffs neglect their burden of making that showing as to EFG specifically.  *See King County v. IKB Deutsche Industriebank AG*, 769 F. Supp. 2d 309, 313 (S.D.N.Y. 2011) ("A plaintiff bears the burden of demonstrating that the court may exercise jurisdiction over *each* defendant." (emphasis added)).

Recognizing that their allegations as to EFG fall woefully short, Plaintiffs seek to cure their deficiencies by resorting to group pleading, classifying all the Defendants except Zurich Capital together as the "Beneficial Shareholders," *see* ZCM Fourth Am. Compl. ¶ 16.  Plaintiffs then, in turn, broadly allege that Zurich Capital, along with all the Beneficial Shareholders, generally availed themselves of the benefits of NY law or relied on a NY bank account.  *See* Fourth Am. Compl. ¶¶ 20–21; *see supra* p. 8 (identifying relevant allegations).  The law in this district is well-settled, however, that such "improper group pleading" cannot provide the basis for exercising personal jurisdiction.  *Berdeaux v. OneCoin*, No. 19-CV-4074 (VEC), 2021 WL 4267693 (S.D.N.Y. Sept. 20, 2021); *see also HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*, No. 20-CV-00967 (LJL), 2021 WL 918556, at *15 (S.D.N.Y. Mar. 10, 2021) (rejecting general allegation that "Defendants sent emails . . . to . . . New York" as sufficient to confer personal jurisdiction in part because it "conflates multiple parties and fails to provide specific allegations").  "Indeed, '[c]ourts in this district have. . .  routinely granted 12(b)(2) motions for lack of personal jurisdiction where

the plaintiff made only broadly worded and vague allegations about a defendant's participation in the specific matter at hand.'" *King Cnty, Wash. v. IKB Deutsche Industriebank, AG*, 769 F. Supp. 2d 309, 321 (S.D.N.Y. 2011) (citation omitted).

*Berdeaux v. OneCoin* and *Tera Grp., Inc. v. Citigroup, Inc*. are instructive in this regard. Plaintiffs in *Berdeaux* sought to group four individual defendants together, by calling them the "Scott Group Defendants," "without distinguishing in the least among the four Defendants." *Berdeaux*, 2021 WL 4267693 at *7. The *Berdeaux* Court rejected Plaintiffs' "attempt to extend an allegation levied against one particular Defendant to the remaining Defendants in the group, seemingly without any basis for doing so, absent speculative and conclusory allegations" and dismissed the defendants. *Id*; *see also In re SSA Bonds Antitrust Litig.*, 420 F. Supp. 3d 219, 233 (S.D.N.Y. 2019) (rejecting personal jurisdiction allegations "in the form of a group pleading [as] insufficient"). Similarly, the *Tera* Court described plaintiff's "resorts to group pleading" as "of the rankest kind" because plaintiff sought to define "all of the defendants as a group of 'Dealer Defendants' – a unit that comprises a dozen multinational financial institutions" without particular averments as to *each* defendant. *Tera Grp., Inc. v. Citigroup, Inc.*, No. 17-CV-4302 (RJS), 2018 WL 4732426, at *3 (S.D.N.Y. Sept. 28, 2018). Here, the Court should likewise reject Plaintiffs' attempts to dodge their obligation to plead personal jurisdiction over EFG in particular, by indiscriminately lumping all of the Defendants together for jurisdictional purposes. *See* ZCM Fourth Am. Compl. ¶¶ 20–21.

Other than these generic group pleading assertions that are insufficient to confer personal jurisdiction over EFG specifically, Plaintiffs make no allegations that EFG, in particular, had U.S. contacts. Their jurisdictional theory, therefore, is a far cry from instances in which this Court has exercised personal jurisdiction over foreign defendants. *See, e.g.*, *Picard v. Fairfield Greenwich*

*Group (In re Fairfield Sentry Ltd.)*, 627 B.R. 546, 568 (Bankr. S.D.N.Y. 2021) (detailing New York contacts sufficient for personal jurisdiction).  EFG—unlike those defendants—is not alleged by Plaintiffs to have met with BLMIS or clients in New York, to have had New York executive offices from which key decisions were made, to have held itself out to contract counterparties as a New York-based entity or to have engaged in meetings in New York related to the redemptions at issue.  *Compare id.* (outlining U.S. touchpoints providing basis for jurisdiction) *with* ZCM Fourth Am. Compl. ¶ 21 (boilerplate allegations).   The Court should dismiss EFG based on the lack of EFG-specific allegations alone.

### 2.    The Fund's Investments with BLMIS Does Not Establish Jurisdiction over EFG

Even if the Court were to consider Plaintiffs' group pleading allegations (which it should not), Plaintiffs still do not adequately plead that EFG purposefully availed itself of New York.  The closest Plaintiffs come is their conclusory contention that EFG indirectly invested with the Fund through Zurich Capital while purportedly "knowing and intending that the Funds would invest substantially all of [their] money" in BLMIS in New York.  ZCM Fourth Am. Compl. ¶ 20.  That allegation is irrelevant.

*First,* EFG's purported belief that Zurich Capital invested in Fairfield shares is not the requisite "suit-related conduct" by "the defendant [itself]" that *Walden* holds are the only contacts relevant to the jurisdictional inquiry.  *Walden*, 571 U.S. at 284.  Plaintiffs' knowing receipt claim is not predicated on the funds that it is seeking to recover ever having been placed with or controlled by BLMIS.  Nor does that knowing receipt claim focus on the decision to *invest* with the Fund as the basis for either liability or jurisdiction.  Instead, the claim is predicated on Zurich Capital having requested and *received* money from the Fund.  Plaintiffs do not allege that those redemption requests were executed in the United States or that the conduct underlying their claims

13

occurred or resulted in injuries in the United States. Nor could they. Plaintiffs' claims for knowing receipt relate to and arise out of the allegedly mistaken calculation of the NAV by the foreign administrator, Citco, and the Fund's subsequent disbursement of redemption payments abroad on the basis of those calculations. *See* ZCM Fourth Am. Compl. ¶¶ 200, 224, 242, 253.

Moreover, the allegation that the Fund used the proceeds of sales of its own securities to fund *its own* investments with BLMIS does not establish personal jurisdiction, *see* ZCM Fourth Am. Compl. ¶ 57—even if EFG somehow knew it planned to do so. The Fund is not alleged to have been an agent of EFG, and the money invested with BLMIS is not even alleged to have been EFG's. Personal jurisdiction must be premised on the *defendant's* conduct, not that of third parties. "The 'substantial connection' between the defendant and the forum State necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum State*." *Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102, 112 (1987) (emphasis in original); *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 344 (2d Cir. 2018) (whether personal jurisdiction lies "depends on the relationship among *the defendant*, the forum, and the litigation") (internal quotation marks omitted) (emphasis added); *In re Fairfield Sentry Ltd.*, 627 B.R. 546, 566 (Bankr. S.D.N.Y. 2021) (Morris, J.) (requiring plaintiff to plead that the *defendant* created the substantial connection to the forum to satisfy the purposeful availment prong).[13] The Supreme Court has "consistently rejected attempts to satisfy this defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third-parties) and the forum

---

[13]    EFG's connection to the United States is far more attenuated than those of defendants in other suits involving BLMIS feeder funds, in which the court has held that it has personal jurisdiction over those defendants. For example, the defendants in *In re Fairfield Sentry Limited*, who actually managed the Funds, were alleged to have performed risk management for the Funds in New York, regularly spoken to BLMIS, shared offices with the Funds' New York headquarters, attended Fund meetings in New York, or have formed equivalent contacts with the United States. *In re Fairfield Sentry Ltd.*, 627 B.R. at 566–69. There are no such allegations here linking EFG's conduct to the forum state.

State." *Walden*, 571 U.S. at 284.[14] Thus, the *Fund*'s investment in New York-based BLMIS is not a basis for personal jurisdiction over EFG, thrice removed from that investment.

*Second*, the allegation that money placed with the Fund may have—but did not necessarily—make its way to BLMIS is not a basis for asserting personal jurisdiction; it is nothing more than the type of "stream of commerce" theory of personal jurisdiction rejected by the Supreme Court. *See J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 882 (2011) ("[I]t is not enough that [a] defendant might have predicted that its goods will reach the forum," but rather must "engage[] in conduct purposefully directed at [the forum]."); *In re Mexican Gov't Bonds Antitrust Litig.*, No. 18-CV-2830 (JPO), 2020 WL 7046837, at *3–4 (S.D.N.Y. Nov. 30, 2020) (holding that neither an attempt to profit from conduct underlying the claim nor the foreseeability of a harm in the forum were sufficient to establish jurisdiction in the absence of a defendant's contact with the forum).

*Third*, even if the conduct of Citco and the Fund were jurisdictionally relevant (and it is not), that conduct did not occur in the forum, but instead happened abroad, *see* ZCM Fourth Am. Compl. ¶¶ 60, 200, and so it does not help Plaintiffs' jurisdictional arguments here. Likewise, the purported injury to BVI-based Sentry from the allegedly miscalculated redemption payments occurred abroad. *See id.* ¶¶ 200, 226, 229–30. Accordingly, jurisdiction is improper because the Fund is "not [a] resident[] of the forum," Citco's and the Fund's conduct occurred outside of the

---

[14]    Courts in this district have, in turn, widely cited *Walden* to find that personal jurisdiction does not exist over foreign bank defendants (like EFG), where plaintiffs—as here—seek to rely on their own forum contacts to establish jurisdiction. *See, e.g.*, *Sullivan v. Barclays PLC*, No. 13-CV-2811 (PKC), 2017 WL 685570, at *44 (S.D.N.Y. Feb. 21, 2017) (rejecting plaintiffs' contacts with the forum as sufficient for personal jurisdiction and dismissing Swiss bank defendant UBS because "plaintiffs' allegations concerning defendants' misconduct does not allege a United States nexus to [that conduct]"); *see also Dennis v. JPMorgan Chase & Co.*, 343 F. Supp. 3d 122, 207 (S.D.N.Y. 2018), *adhered to on denial of reconsideration*, No. 16-CV-6496 (LAK), 2018 WL 6985207 (S.D.N.Y. Dec. 20, 2018) (plaintiffs' own forum contacts did not give rise to personal jurisdiction where "the Foreign Defendants are alleged to have engaged in [the conduct giving rise to the claims] while they were outside of the United States"); *cf. Henkin v. Gibraltar Priv. Bank & Tr. Co.*, No. CV 16-5452, 2018 WL 557866, at *4 (E.D.N.Y. Jan. 22, 2018) (similar).

forum, and the Funds did "not sustain[] their injuries in [the forum]." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1031 (2021) (articulating the holding of *Bristol-Myers*, 137 S. Ct. 1773).

Notably, this case is very different from *Picard v. Bureau of Labor Ins. (In re Sec. Investor Prot. Corp.)*, 480 B.R. 501 (Bankr. S.D.N.Y. 2012) (Lifland, J.), in which Judge Lifland held that a defendant's investment with the Fund was sufficient to establish personal jurisdiction *with respect to claims arising from the liquidation of BLMIS*. In that case, the allegations concerned transfers by BLMIS from New York, and the court held that the decision to invest in a fund that would ultimately invest with Madoff gave rise to personal jurisdiction with respect to claims arising from that *Madoff* investment. But Plaintiffs' claims in this case do not arise from the Madoff investment; they arise from the redemption payments made by the Fund from the BVI to Zurich Capital and then allegedly made from Zurich Capital to EFG. It is not credible that EFG would have understood itself to be submitting to U.S. jurisdiction with respect to BVI claims related to foreign-based Zurich Capital and foreign-based Sentry themselves.[15]

### 3.    The Use of U.S. Currency and Designation of U.S. Accounts to Receive Redemption Payments Do Not Establish Jurisdiction

Plaintiffs also allege that minimum contacts are established because Zurich Capital, EFG and the other Defendants "selected U.S. dollars as the currency in which to invest and execute their transactions in Sentry" and "designated United States-based and/or New York-based bank accounts to receive their Redemption Payments from the Funds and actively directed Redemption Payments . . . into those bank accounts." ZCM Fourth Am. Compl. ¶ 20.

---

[15]    And in any event, Judge Lifland's holding in *Bureau of Labor Ins.* is drawn into question by the Supreme Court's subsequent holding in *Walden*.

Unsurprisingly, the only jurisdictional allegation pleaded with *any* specificity relates not to EFG but instead to Zurich Capital. EFG is not alleged to have received transfers from the Fund or the Fund's foreign administrator. Instead, it is alleged to be liable in this case *exclusively* on the basis that it received payments abroad from Zurich Capital, who itself is foreign. The only potentially relevant connection with New York EFG is asserted to have had is the vague allegation grouping EFG and the other Defendants with Zurich Capital and asserting that all Defendants received the payments in "United States-based and/or New York-based bank accounts." ZCM Fourth Am. Compl. ¶ 20. But that boilerplate assertion is plainly insufficient under this District's firm directive against group pleading. *See supra* p. 8.

Moreover, the *only* U.S. account Plaintiffs identify is not an account associated with EFG but instead is a New York-based Citibank NA bank account where *Zurich Capital* supposedly received redemption payments from the Fund, *see id.* ¶ 67. The nature of Zurich Capital's bank account—whether a correspondent bank account or otherwise—is irrelevant to jurisdiction over *EFG* because jurisdiction is based on the "contacts that the defendant *himself* creates with the forum State," and not by others. *Walden*, 571 U.S. at 284. Tellingly, Plaintiffs make no attempt to even plead how that bank account is connected to EFG in any way, let alone that EFG itself used that account or received transfers from Zurich Capital out of that account. *See Rush*, 444 U.S. at 332 (plaintiff must allege a basis for jurisdiction with respect to *each defendant*). Their "bland assertion[s] . . . [are] insufficient to establish jurisdiction" where there "are no allegations of specific facts which would connect [EFG] with any New York activity." *Lehigh Val. Indus., Inc. v. Birenbaum*, 527 F.2d 87, 93–94 (2d Cir. 1975). In any event, the mere allegation that moneys were sent through New York fail to show that EFG "'projected' [itself] into the state sufficiently to confer personal jurisdiction over it." *Hill v. HSBC Bank plc*, 207 F.Supp.3d 333,

17

339 (S.D.N.Y. 2016).  These shortfalls alone provide a basis to find personal jurisdiction lacking as to EFG.

In a single footnote to an exhibit to the Fourth Amended Complaint, Plaintiffs argue that the Defendants who *did not* receive payments into U.S.-based accounts can nonetheless be subject to personal jurisdiction because—Plaintiffs assume—those payments may have transited U.S.-based correspondent accounts on their way to Defendants' foreign accounts.  *See* ZCM Fourth Am. Compl., Ex. A ("[T]o the extent that any such Redemption Payments were directed outside the United States, they went through a correspondent bank account in the United States identified by shareholders for such payments.").  But this incidental and non-purposeful conduct does not establish personal jurisdiction in this Circuit.

Allegations concerning mere use of a bank account in the United States to facilitate U.S. dollar payments does not, as a matter of law in this Circuit, give rise to personal jurisdiction.  It was the *Fund*, not EFG, that through its BVI-law governed Articles designated U.S. dollars as the "Base Currency" for payments to investors.  *See* Sentry Articles, Arts. 1, 10(1)(c) (Ex. F to the Declaration of William Hare in Support of Motion for Leave to Amend, dated Oct. 21, 2016  filed in Docket No. 10-03496 at ECF Doc. # 925 and reattached as **Exhibit A** hereto)(defining "Base Currency" as "the currency of the United States of America" and stating "payment shall be made to the Applicant in the Base Currency in respect of the redemption or purchase of Shares").  As explained above, the *Fund*'s decisions and acts cannot serve as the predicate for personal jurisdiction over EFG.  *See Walden*, 571 U.S. at 284; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction.").

Moreover, the receipt of funds into a bank account is not sufficient to support personal jurisdiction where the account is maintained "merely to ensure compliance with contract terms negotiated and executed outside of [the forum.]" *To v. HSBC Holdings PLC*, No. 15-CV-3590-LTS-SN, 2017 WL 816136, at *5 (S.D.N.Y Mar. 1, 2017) *aff'd*, 700 F. App'x 66 (2d Cir. 2017). "Courts in this district have routinely held that merely maintaining a New York correspondent bank account is insufficient to subject a foreign bank to personal jurisdiction," *Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 727 (S.D.N.Y. 2010) (citing cases); *see also Al Rushaid v. Pictet & Cie*, 68 N.E. 3d 1, 16–17 (N.Y. 2016) (confirming that "coincidental" use of a correspondent account is an insufficient jurisdictional basis), as foreign banks conducting business in the United States typically maintain accounts at U.S. banks simply "to effect dollar transactions." *Licci v. American Exp. Bank Ltd.*, 704 F. Supp. 2d 403, 405 n.1 (S.D.N.Y. 2010) ("Because foreign banks are typically unable to maintain branch offices in the United States, they maintain accounts, in their own name, at banks that are doing business in the United States to effect dollar transactions."), *vacated in part by Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161 (2d Cir. 2013).[16]

The redemption payments at issue indisputably went from one foreign party to another to another; both the origin and destination of the funds were abroad. As such, the parties to these transactions, much less EFG, never expected this technicality to land their dispute in U.S. court. Were the incidental use of U.S.-based accounts sufficient to confer personal jurisdiction over foreign entities, New York would become a clearinghouse for *any* foreign commercial dispute,

---

[16]    *See also SPV*, 882 F.3d at 345 (finding a "handful of communications and transfer of funds . . . are insufficient to allow the exercise of specific personal jurisdiction over the [Foreign] Defendants"); *Ritchie Capital Mgmt., L.L.C. v. JPMorgan Chase & Co.*, No. CV 14-4786 (DWF/FLN), 2017 WL 6403096, at *5 (D. Minn. Dec. 14, 2017) (noting the receipt of funds and "mere maintenance of a bank account does not confer jurisdiction on the court"), *rev'd on other grounds*, 960 F.3d 1037 (8th Cir. 2020).

merely because global transactions are frequently cleared in U.S. dollars. *See Mashreqbank PSC v. Ahmed Hamad Al Gosaibi & Bros. Co.*, 12 N.E.3d 456, 459–60 (N.Y. 2014) ("Our state's interest in the integrity of its banks . . . is not significantly threatened every time one foreign national, effecting what is alleged to be a fraudulent transaction, moves dollars through a bank in New York.").

Accordingly, rather than rely simply on the maintenance of a correspondent account, courts in this Circuit typically assess both the frequency and deliberateness with which the accounts were used, neither of which supports conferring jurisdiction here. *See Vasquez v. Hong Kong & Shanghai Banking Corp., Ltd.*, 477 F. Supp. 3d 241, 255–58 (S.D.N.Y. 2020) (finding that foreign banks' use of correspondent accounts was insufficiently deliberate to subject it to personal jurisdiction), *appeal docketed*, No. 20-3081 (2d Cir. 2020); *see also Licci*, 732 F.3d at 169 (noting that the New York Court of Appeals found that "the frequency and deliberate nature" of the use of correspondent accounts is determinative of whether personal jurisdiction lies). Deliberateness includes whether the defendants exhibited the requisite control over the account, sufficiently marketed or promoted the use of the account, projected themselves into the forum market in other ways, as well as whether the accounts themselves were necessary to the Ponzi scheme. *See Vasquez*, 477 F. Supp. 3d at 257 (synthesizing Second Circuit and New York case law on correspondent accounts). Such deliberate conduct (if any) does not exist here.

There is no allegation that such accounts were (1) frequently used—or used at all by EFG, or (2) in any way necessary to the alleged fraud. In fact, correspondent accounts which process U.S. dollar transactions are available in countries around the world. *See Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 729 (S.D.N.Y. 2010) (noting that foreign entities can leverage U.S. dollar correspondent accounts throughout Europe, Asia, and Africa). Because the use of any such

accounts would be "merely incidental" to decisions made abroad and "not specifically directed by any of the [Defendant] entities to facilitate the Ponzi scheme," *To*, 2017 WL 816136, at *7 n.6, these alleged contacts are insufficient to establish personal jurisdiction over EFG.  *See id.* (rejecting personal jurisdiction over foreign defendants because their alleged connection to the forum was the transmission of funds "to and from BLMIS . . .[as an] incidental consequence[] of fulfilling a foreign contract"); *Hill v. HSBC Bank plc*, No. 14-CV-09745 (LTS), 2016 WL 4926199, at *4 (S.D.N.Y. Sept. 15, 2016) (finding the transmission of funds to and from New York to be "incidental consequences of fulfilling a foreign contract . . . insufficient to 'project' EFG into New York" and "do not amount to 'purposeful availment' of the laws of" the forum).

The allegation—similarly buried in a footnote to an exhibit—that *Citco*, the Fund's administrator, maintained a correspondent account, likewise does not establish jurisdiction over EFG.  *See* ZCM Fourth Am. Compl., Ex. A ("Whether or not Redemption Payments were ultimately directed to bank accounts in the United States, all Redemption Payments from Sentry went through a correspondent bank account that Sentry's administrator [Citco] maintained in the United States.").  This allegation speaks to foreign third-party Citco's purported contact with the forum that has no nexus to Plaintiffs' claims.  Moreover, Plaintiffs fail to corroborate this allegation in their action against Citco, where they plead Citco's use of these U.S.-based bank accounts merely "on information and belief."  Citco Am. Compl. ¶ 19, *Fairfield Sentry Ltd. (In Liquidation), et al. v. Citco Glob. Custody NV, et al.*, Adv. Pro. No. 19-01122 (S.D.N.Y. Bankr. Nov. 26, 2019); *see Guo Jin v. EBI, Inc.*, No. 05-CV-4201 (NGG) (SMG), 2008 WL 896192, at *2 (E.D.N.Y. Mar. 31, 2008) (allegations made "upon information and belief" insufficient for a finding of personal jurisdiction).  The facts of where Citco received redemption payments *from Sentry itself* are not "peculiarly within the possession and control of the defendant" or "based on

factual information that makes the inference of culpability plausible." *In re Caisse*, 568 B.R. 6, 13 n.5 (Bankr. S.D.N.Y. 2017) (Bernstein, J.) (internal quotation marks omitted). Nor are these allegations "accompanied by a statement of the facts upon which the belief is founded." *Id.* (internal quotation marks omitted). Thus, these allegations are an inadequate basis to establish personal jurisdiction.

Finally, even if the selection of the Base Currency and the incidental payments into U.S.-based accounts could establish a connection to the forum, Plaintiffs' claim does not—as it must—arise out of or relate to that conduct. Both alleged bases for jurisdiction were incidental results of decisions made by the Fund pursuant to a foreign-law governed contract executed abroad. *See Licci*, 704 F. Supp. 2d at 406 ("Where the relationship between the claim and the [alleged contact with the forum] . . . is merely coincidental[,] jurisdiction will be lacking."); *Johnson v. UBS AG*, No. 2:20-CV-00357-MCS-JC, 2020 WL 6826477, at *4 (C.D. Cal. Nov. 12, 2020) (holding that third-party's transfer of funds to defendant did not establish specific jurisdiction). Because the Fund's purported injuries were entirely unrelated to the choice of the currency used or the accounts in which investments were received, this Court cannot exercise personal jurisdiction over EFG. *See Walden*, 571 U.S. at 284.

### 4.    Plaintiffs' Remaining Threadbare Conclusions Similarly Fail to Establish That This Court Can Exercise Personal Jurisdiction Over EFG

The remainder of Plaintiffs' threadbare allegations similarly do not help them. They are merely broad and conclusory assertions that EFG—along with the other Defendants—"transacted business" in New York, Fourth Am. Compl. ¶ 20, "derived significant revenue" in New York, *id.*, or otherwise maintained "minimum contacts and/or general business contacts with the United States or New York," *id.* Such conclusions—unsupported by factual averments— are not entitled to any weight in the jurisdictional inquiry. *See Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d

22

Cir. 1998) (courts need not credit "conclusory non-fact-specific jurisdictional allegations"); *Deitrick v. Gypsy Guitar Corp.*, No. 16 CIV. 616 (ER), 2016 WL 7494881, at \*7 (S.D.N.Y. Dec. 28, 2016) ("Plaintiff's mere conclusory statement—tracking the language of the required showing—is insufficient to meet his burden."); *Powell v. Monarch Recovery Mgmt., Inc.*, No. 15-CV-2162 (MKB), 2016 WL 8711210, at \*6 (E.D.N.Y. Jan. 22, 2016) (finding that "a plaintiff's conclusory allegations of transacting business are insufficient" and collecting cases).[17]

Indeed, "courts have regularly held that a plaintiff asserting jurisdiction must tender *specific* allegations about the defendant's contacts with the forum state." *Delaware State Police*, 939 F. Supp. 2d at 332–33 (emphasis added); *Gmurzynska v. Hutton*, 257 F.Supp.2d 621, 625 (S.D.N.Y.2003) (noting that "conclusory allegations are not enough to establish personal jurisdiction").[18] Under this standard, courts in this district have found that broad-based allegations about the transacting of business in New York or obtaining of revenue in New York patently insufficient to give rise to personal jurisdiction. *See also Guo Jin v. EBI, Inc.*, No. 05-CV-4201 (NGG) (SMG), 2008 WL 896192, at \*2 (E.D.N.Y. Mar. 31, 2008) ("Instead of providing the court with facts sufficient to justify its exercise of jurisdiction, [the plaintiff] has simply phrased legal conclusions as statements of fact, stating, for example, that Defendants 'contracted ... to supply services in the State of New York' and that Defendants 'have derived substantial revenue from . . . . services performed in New York."). Here, Plaintiffs' similarly conclusory allegations fare no

---

[17]    *See also Doe v. Delaware State Police*, 939 F. Supp. 2d 313, 329 (S.D.N.Y. 2013) (ruling that broad allegations that the defendants—members of an out-of-state police force—would "issue warrants, execute warrants, seek extradition in New York, make New York court appearances, and purchase goods and services from New York manufacturers" insufficient to confer personal jurisdiction, absent particularized N.Y. touchpoints relevant to the claim).

[18]    *See also Plunket v. Doyle*, No. 99–CV–11006, 2001 WL 175252, at \*3 (S.D.N.Y. Feb. 22, 2001) ("Because plaintiff has alleged no facts beyond conclusory allegations, tending to show that defendants or their agents had contacts with New York and availed themselves of this forum, plaintiff has not met her due process burden.").

better and do not salvage their jurisdictional theory.[19]

### B.     The Exercise of Personal Jurisdiction over EFG Would Be Unreasonable

Compounding the absence of sufficient minimum contacts with the forum or their connection to the Plaintiffs' claim, the Court's exercise of personal jurisdiction over EFG would be unreasonable and contrary to "traditional notions of fair play and substantial justice." *Metro. Life*, 84 F.3d at 578 (quoting *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945)). "The Due Process Clause . . . gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (citation omitted). Here, where its purported contacts with the United States arose from actions that were taken by foreign entities on foreign soil pursuant to foreign contracts, EFG should have "reasonably anticipate[d] being haled into court" for jurisdiction over it to exist. *Id.*[20] The inequity of exercising personal jurisdiction over EFG is particularly blatant, as Plaintiffs can (and have, albeit unsuccessfully) taken advantage of an alternative forum in the BVI.

In evaluating the reasonableness of exercising personal jurisdiction, "[a] court must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest

---

[19]     For the avoidance of doubt, EFG expressly preserves its argument that jurisdictional discovery is premature absent this Court finding that the Plaintiffs have pled a *prima facie* case of personal jurisdiction over EFG. While the Court has addressed this issue at a hearing on October 28, 2021 in two of Plaintiffs' adversary proceedings captioned *Fairfield Sentry Ltd. v. HSBC Securities Services (Luxembourg) SA*, Adv Pro. No. 10-3630, and *Fairfield Sentry Ltd v. HSBC Private Bank (Suisse) SA*, Adv. Pro. No. 10-3633, it has not done so with respect to the allegations at issue in this action and as to EFG.

[20]     "[T]he reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on minimum contacts, the less a defendant needs to show in terms of unreasonableness to defeat jurisdiction." *In re CIL Limited*, 582 B.R. 46, 79 (Bankr. S.D.N.Y. 2018) (internal quotation marks and citation omitted); *see also Porina v. Marward Shipping Co.*, No. 05 CIV. 5621(RPP), 2006 WL 2465819, at *6 (S.D.N.Y. Aug. 24, 2006) ("[I]f a defendant's contacts with the United States are weak, the plaintiff has to make a stronger showing of reasonableness in order to show that jurisdiction over the defendant is proper.").

in obtaining relief." *Asahi*, 480 U.S. at 113–14.  Each of these factors weighs against exercising personal jurisdiction here.

*First*, defending Plaintiffs' actions before this Court would create a burden on EFG, as "none of its records, files, or witnesses with information about the litigation are located" in the United States.  *Metro. Life*, 84 F.3d at 574.  This holds true despite the availability of modern technology, which might reduce, but does not eliminate, the burden.  *See id.* ("[T]his factor cuts slightly in favor of the defendant"); *Thorsen v. Sons of Norway*, 996 F. Supp. 2d 143, 159 (E.D.N.Y. 2014) (finding the burden of traveling to New York had diminished in the modern age but was still an "important factor").  Moreover, EFG hails from Switzerland, where discovery of such documents would expose these defendants to risk of civil and criminal liability.  *See* Bench Ruling Granting in Part and Denying in Part the Foreign Representatives Motion Seeking Limited Relief, *Fairfield Sentry Ltd., (In Liquidation), et al., v. Theodoor GGC Amsterdam, et al.*, No. Adv. Pro. No. 10-03496, ECF No. 799-2 (July 19, 2012).[21]

*Second*, the United States' lesser interest in adjudicating disputes between *foreign* parties arising under *foreign* law further cautions against exercising jurisdiction.  *See Asahi*, 480 U.S. at 114–15.  The Supreme Court has noted that "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field."  *Id.* at 115 (internal quotation marks omitted).

*Finally*, Plaintiffs have not demonstrated that it is more convenient for them to litigate their

---

[21]    In particular, the Court observed that:

   The various respondents have described . . . the strong and undeniable interest of many nations in enforcing their banking secrecy laws.  Thus, yielding to the Foreign Representative's Disclosure Request implicates the significant bank customer confidentiality laws of no fewer than 30 countries . . . .  As such, this Court is hard-pressed to find any compelling United States' interest in mandating discovery here at this juncture of the pending litigation." *Id.*

claims against EFG in New York rather than in the BVI.  *See id.* at 114.  Indeed, Plaintiffs initially chose the BVI as the preferable and most convenient forum to pursue their claims.  Only upon losing at the highest level in the BVI court system did Plaintiffs then discontinue their suits in that forum, and make a strategic decision to pursue their claims in the United States in what they hoped would be a more advantageous forum.  *See Ford Motor Co.*, 141 S. Ct. at 1031 (noting that jurisdiction had been found improper where "the plaintiffs were engaged in forum-shopping").  Plaintiffs' maneuvering demonstrates a lack of interest in obtaining convenient and effective relief and undercuts any claim that the assertion of personal jurisdiction over EFG in this Court would be reasonable.

## CONCLUSION

Because Plaintiffs' Fourth Amended Complaint fails to provide "any basis to demonstrate that [this Court] would have [] personal jurisdiction" over EFG, *Spiegel v. Schulman*, 604 F.3d 72, 78 (2d Cir. 2010), the Court should grant the instant motion to dismiss for lack of personal jurisdiction.

Dated: October 29, 2021
      New York, New York

Respectfully Submitted,

*/s/ D. Farrington Yates*
D. Farrington Yates
Adam M. Lavine
Donna (Dong Ni) Xu

**KOBRE & KIM LLP**
800 Third Avenue
New York, NY, 10022
T: (212) 488-1200
F: (212) 488-1220
Farrington.Yates@kobrekim.com
Adam.Lavine@kobrekim.com
Donna.Xu@kobrekim.com

*Counsel for EFG Bank AG*