UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re:<br><br>FAIRFIELD SENTRY LIMITED, et al.,<br><br>               Debtor in Foreign<br>               Proceedings. | Chapter 15 Case<br><br>Case No. 10-13164 (CGM)<br><br>Jointly Administered |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al.,<br><br>               Plaintiffs,<br><br>     v.<br><br>THEODOOR GGC AMSTERDAM, et al.,<br><br>               Defendants. | Adv. Pro. No. 10-03496 (CGM)<br><br>Administratively Consolidated |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al.,<br><br>               Plaintiffs,<br><br>     v.<br><br>ZURICH CAPITAL MARKETS COMPANY, et al.,<br><br>               Defendants. | Adv. Pro. No. 10-03634 (CGM) |

**MEMORANDUM OF LAW IN SUPPORT OF CITIVIC NOMINEES LIMITED'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
UNDER RULE 12(B)(2)**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ......................................................................................................1

BACKGROUND..........................................................................................................................6

ARGUMENT ..............................................................................................................................9

A.  Citivic's Alleged Contacts With The Forum Are Insufficient To Establish
    Personal Jurisdiction ......................................................................................................10

    1.  Plaintiffs Fail To Plead A Prima Facie Case Of Personal Jurisdiction Over
        Citivic ....................................................................................................................11

    2.  The Fund's Investment In BLMIS Does Not Establish Personal Jurisdiction
        Over Citivic .............................................................................................................14

    3.  The Use Of U.S. Currency And Designation Of U.S. Accounts To Receive
        Redemption Payments Do Not Establish Personal Jurisdiction ..............................17

B.  The Exercise Of Personal Jurisdiction Over Citivic Would Be Unreasonable ....................22

CONCLUSION...........................................................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Al Rushaid v. Pictet & Cie*,
68 N.E. 3d 1 (N.Y. 2016) ........................................................................................ 19, 22

*Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal.*,
480 U.S. 102 (1987) ................................................................................ 15, 23, 24, 25

*Ayyash v. Bank Al-Madina*,
2006 WL 587342 (S.D.N.Y. Mar. 9, 2006) ................................................................ 14

*Bristol-Myers Squibb v. Super. Ct. of Cal.*,
137 S. Ct. 1773 (2017) ............................................................................................... 11

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ................................................................................................... 11

*Charles Schwab Corp. v. Bank of Am. Corp.*,
883 F.3d 68 (2d Cir. 2018) .................................................................................. 10, 12

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ................................................................................................... 10

*Ehrenfeld v. Mahfouz*,
489 F.3d 542 (2d Cir. 2007) ...................................................................................... 13

*Eternal Asia Supply Chain Mgmt. (USA) Corp. v. Chen*,
2013 WL 1775440 (S.D.N.Y. Apr. 25, 2013) ........................................................... 14

*Fairfield Sentry Ltd. (in Liquidation) v. Migani*,
[2014] UKPC 9 ............................................................................................................. 5

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
141 S. Ct. 1017 (2021) ............................................................................................... 25

*Frontera Res. Azer. Corp. v. State Oil Co. of Azer. Republic*,
582 F.3d 393 (2d Cir. 2009) ...................................................................................... 13

*Hau Yin To v. HSBC Holdings PLC*,
2017 WL 816136 (S.D.N.Y Mar. 1, 2017) ...................................................... 19, 20, 22

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
466 U.S. 408 (1984) ........................................................................ 16, 18, 21

*Hill v. HSBC Bank plc*,
207 F. Supp. 3d 333, 340 (S.D.N.Y. 2016) ..................................... 21

*In re Caisse*,
568 B.R. 6 (Bankr. S.D.N.Y. 2017) ................................................ 21, 22

*In re CIL Limited*,
582 B.R. 46 (Bankr. S.D.N.Y. 2018) .............................................. 23

*In re Fairfield Sentry Ltd.*,
2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) ...................... 3, 9

*In re Fairfield Sentry Ltd.*,
458 B.R. 665 (S.D.N.Y. 2011) ....................................................... 5, 24

*In re Fairfield Sentry Ltd.*,
627 B.R. 546 (Bankr. S.D.N.Y. 2021) ........................................... 15, 16

*In re Mexican Gov't Bonds Antitrust Litig.*,
2020 WL 7046837 (S.D.N.Y. Nov. 30, 2020) ............................... 16

*In re Teligent, Inc.*,
2004 WL 724945 (Bankr. S.D.N.Y. Mar. 30, 2004) ...................... 13

*In re Terrorist Attacks on September 11, 2001*,
714 F.3d 659 (2d Cir. 2013) ........................................................... 10

*J. McIntyre Mach., Ltd. v. Nicastro*,
564 U.S. 873 (2011) ....................................................................... 16

*Jazini v. Nissan Motor Co., Ltd.*,
148 F.3d 181 (2d Cir. 1998) ........................................................... 13

*Jesner v. Arab Bank, PLC*,
138 S. Ct. 1386 (2018) ................................................................... 19

*Langenberg v. Sofair*,
2006 WL 2628348 (S.D.N.Y. Sept. 11, 2006) .............................. 10

*Lehigh Val. Indus., Inc. v. Birenbaum*,
527 F.2d 87 (2d Cir. 1975) ............................................................. 12

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,*
732 F.3d 161 (2d Cir. 2013) ........................................................................ 20

*Mashreqbank PSC v. Ahmed Hamad Al Gosaibi & Bros. Co.,*
12 N.E.3d 456 (N.Y. 2014) .......................................................................... 19

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.,*
84 F.3d 560 (2d Cir. 1996) ............................................................. 12, 22, 23

*NovelAire Techs., L.L.C. v. Munters AB,*
2013 WL 6182938 (S.D.N.Y. Nov. 21, 2013) .............................................. 14

*Picard v. Bureau of Labor Ins. (In re Sec. Inv'r Prot. Corp.),*
480 B.R. 501 (Bankr. S.D.N.Y. 2012) ......................................................... 17

*Porina v. Marward Shipping Co., Ltd.,*
2006 WL 2465819 (S.D.N.Y. Aug. 24, 2006) .............................................. 23

*RSM Prod. Corp. v. Fridman,*
643 F. Supp. 2d 382 (S.D.N.Y. 2009) ......................................................... 13

*Rush v. Savchuk,*
444 U.S. 320 (1980) ..................................................................................... 12

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,*
2016 WL 6900689 (Bankr. S.D.N.Y. Nov. 22, 2016) .................................... 6

*Sonterra Cap. Master Fund Ltd. v. Credit Suisse Grp. AG,*
277 F. Supp. 3d 521 (S.D.N.Y. 2017) ......................................................... 10

*Spiegel v. Schulman,*
604 F.3d 72 (2d Cir. 2010) .......................................................................... 25

*SPV Osus Ltd. v. UBS AG,*
882 F.3d 333 (2d Cir. 2018) ............................................................ 15, 20, 21

*Stratagem Dev. Corp. v. Heron Int'l N.V.,*
153 F.R.D. 535 (S.D.N.Y. 1994) ............................................................ 11, 12

*Tamam v. Fransabank Sal,*
677 F. Supp. 2d 720 (S.D.N.Y. 2010) ..................................................... 19, 20

*Thorsen v. Sons of Norway,*
996 F. Supp. 2d 143 (E.D.N.Y. 2014) ......................................................... 23

*Universal Trading & Inv. Co. v. Tymoshenko*,
2012 WL 6186471 (S.D.N.Y. Dec. 12, 2012) ............................................... 19, 20

*Vasquez v. Hong Kong & Shanghai Banking Corp., Ltd.*,
477 F. Supp. 3d 241 (S.D.N.Y. 2020) ............................................................ 20

*Walden v. Fiore*,
571 U.S. 277 (2014) ........................................................................... passim

*Waldman v. Palestine Liberation Org.*,
835 F.3d 317 (2d Cir. 2016) ...................................................................... 10, 11

*World-Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286 (1980) .............................................................................. 22

## Rules

Federal Rule of Civil Procedure 12(b)(2) ....................................................... 1, 11, 12

Defendant Citivic Nominees Limited ("Citivic"), by and through its undersigned counsel, submits this memorandum of law in support of its motion to dismiss the Fourth Amended Complaint ("Fourth Amended Complaint") filed by Plaintiffs Kenneth M. Krys and Greig Mitchell solely in their capacities as the liquidators of Fairfield Sentry Ltd. ("Sentry" or the "Fund")[1] pursuant to Federal Rule of Civil Procedure 12(b)(2).

## PRELIMINARY STATEMENT

Plaintiffs' knowing receipt claim against Citivic is based entirely on the allegation that Defendant Zurich Capital Markets Company ("Zurich Capital") received redemption payments from the Fund and that Zurich Capital "may have" paid some or all of these payments to an account holder or holders associated with Citivic. Dkt. No. 313 ("ZCM Fourth Am. Compl.") ¶¶ 41, 251.[2] There are no jurisdictional allegations about the redemption payments that "may have" been paid to Citivic – such as where Citivic received them, their amounts, or the dates when they were received – nor is there any allegation that Citivic even entered into an agreement with Zurich Capital to subscribe for the underlying shares. Plaintiffs' handful of non-specific and conclusory allegations, which are made against Zurich Capital and all named and unnamed "beneficial shareholders" as a group, are insufficient to establish that the Court has personal jurisdiction over Citivic with respect to this claim. Indeed, the Fourth Amended Complaint itself demonstrates that every relevant and material aspect of the claim is foreign:

- Citivic is a foreign entity with its principal place of business and place of incorporation in the United Kingdom. *Id.* ¶ 41.

- Plaintiffs allege no relevant activities by Citivic in or directed at the United States.

[1] Plaintiffs bring this action only on behalf of Sentry, not Fairfield Sigma Limited or Fairfield Lambda Limited, and thus this motion refers to only Sentry as the "Fund." *See* ZCM Am. Compl. ¶¶ 1, 26, 243; *see also id.* ¶¶ 20-23, 41.
[2] For the Court's convenience, the Fourth Amended Complaint is attached to the notice of motion as Exhibit A. Unless otherwise noted, references to "Dkt. ___" refer to *Fairfield Sentry Ltd. (In Liquidation) v. Zurich Capital Markets Co.*, Adv. Pro. No. 10-03634 (Bankr. S.D.N.Y.).

- Zurich Capital, as the initial transferee of the redemption payments allegedly transferred to Citivic, is a foreign entity with its principal place of business and place of incorporation in Ireland. *Id.* ¶ 32.

- Sentry is a British Virgin Islands ("BVI") hedge fund that is now in liquidation in its home jurisdiction of the BVI. *Id.* ¶ 26.

- Zurich Capital was contractually due the redemption under the Fund's Articles of Association (the "Articles"), corporate documents governed by BVI law.

- The Articles provide a BVI contractual right to redeem shares in the Fund at its Net Asset Value ("NAV") when the shares were tendered to the Fund's Dutch administrator, Citco Fund Services (Europe) B.V. ("Citco Fund Services" or the "Citco Administrator").

- Citco Fund Services, which is alleged to have calculated the NAV, is located in the Netherlands.

When it has served their purposes, Plaintiffs have elsewhere agreed that their claims are purely foreign. In July 2021, in connection with their pending appeal seeking reinstatement of certain dismissed claims, Plaintiffs told the District Court:

> **The redemption transfers at issue here were purely foreign.** The Citco Administrator (a foreign entity) managed the share register and processed the redemption requests abroad, and the Funds (also foreign entities) transferred redemption payments to Defendants (also chiefly foreign entities). . . . As Defendants concede (Omnibus Bankr. Dkt. 1457 at 19), *every relevant component of the transactions at issue here occurred outside the territorial jurisdiction of the United States.*

Pls'-Appellants' Opening Br. for Second-Round Appeal at 24, *Fairfield Sentry Ltd. v. Citibank NA London*, No. 19-cv-3911 (S.D.N.Y. July 21, 2021), Dkt. No. 440 (emphasis added).

This foreign claim was only filed in this Court due to a mistake of law made by Plaintiffs more than a decade ago. As this Court found, Plaintiffs incorrectly construed the subscription agreement for the purchase of shares in the Fund as containing a New York forum selection clause for their claim against Zurich Capital and the beneficial shareholders it might represent.[3]

---

[3] Citivic was not party to that subscription agreement but Plaintiffs have included it based on a provision of the subscription agreement by which Zurich Capital, if "subscribing as trustee, agent, representative or nominee for

This Court rejected that theory in *Fairfield I* because the knowing receipt claim is solely based on redemptions and does not arise out of the subscription agreement. *In re Fairfield Sentry Ltd.* ("*Fairfield I*"), 2018 WL 3756343, at *11 (Bankr. S.D.N.Y. Aug. 6, 2018) (adhering to the Privy Council's holding "that the Subscription Agreement was irrelevant to actions to recover the inflated redemption payments").

This has left Plaintiffs – now on their fourth complaint – grasping to justify the expense of litigating against Citivic and hundreds of others in New York, a forum with no connection to the redemptions at issue. As this Court commented:

> It just sounds like you litigated these issues or you should litigate them in the BVI. I don't understand why they're here. . . . [A]t some point you commenced these cases here. . . . And the question is why you didn't commence them in the BVI.

July 27, 2016 Hr'g. Tr. at 12-14, *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, Adv. Pro. No. 10-3496 (Bankr. S.D.N.Y. July 28, 2016), Dkt. No. 906.

Perhaps cognizant that their only allegation against Citivic is that it "may have" received redemption payments from Zurich Capital, ZCM Fourth Am. Compl. ¶ 41, Plaintiffs attempt to group Citivic with Zurich Capital and all named and unnamed beneficial shareholders to allege that if "Zurich Capital and the Beneficial Shareholders" did receive such redemption payments, they did so through "United States-based and/or New York-based accounts," *id.* ¶ 20. But the Fourth Amended Complaint provides no basis for this allegation against Citivic, and it lists a New York account *only* in connection with transfers from the Fund to Zurich Capital. *Id.* ¶ 67; Ex. A. Such vague group pleading cannot be used to circumvent Plaintiffs' burden of establishing personal jurisdiction over Citivic. Nor should Plaintiffs be permitted to embark upon a fishing expedition through jurisdictional discovery based on the thin allegation that a

---

another person . . . agrees that the representations and agreements herein are made by [Zurich Capital] with respect to itself and the Beneficial Shareholder." ZCM Fourth Am. Compl. ¶ 24.

defendant "may have" been involved in suit-related conduct in the hopes that something will turn up to cure their pleading deficiency.

Plaintiffs' remaining arguments for personal jurisdiction also fail.

*First*, Plaintiffs have argued that the Due Process Clause's minimum contacts requirement is satisfied because Citivic knew that Zurich Capital was investing with the Fund and knew, in turn, that the Fund was directly or indirectly investing its own money in Bernard L. Madoff Investment Securities LLC ("BLMIS"). But this argument is not relevant to Plaintiffs' knowing receipt claim, which does not turn on the initial investment with the Fund but rather is based on redemption payments from the Fund and the allegations of Citco Fund Services' bad faith calculation of those payments in the Netherlands. *See* ZCM Fourth Am. Compl. ¶¶ 8-9, 17. Plaintiffs' claim is not about, and does not arise out of, any investment with BLMIS. Even if the Fund's investment with BLMIS were relevant, however, those investments – not made by Citivic – are not the sort of minimum contacts that would support personal jurisdiction over Citivic. As the Supreme Court's decision in *Walden v. Fiore*, 571 U.S. 277 (2014) establishes, a defendant's knowledge of the *plaintiff*'s contacts with the forum – here, the Fund's contacts with BLMIS – is insufficient to establish personal jurisdiction.

*Second*, Plaintiffs allege that minimum contacts is satisfied because "Zurich Capital and the Beneficial Shareholders . . . maintain[ed] bank accounts in the United States at Citibank NA, and in fact receiv[ed] Redemption Payments in those United States-based and/or New York-based accounts." ZCM Fourth Am. Compl. ¶ 20. Plaintiffs' conclusory allegation grouping Citivic with Zurich Capital and other alleged beneficial shareholders cannot establish minimum contacts. Plaintiffs list only a New York-based Citibank NA bank account where *Zurich Capital* supposedly received redemption payments from the Fund, not Citivic. The

location and nature of Zurich Capital's bank account – whether a correspondent bank account or otherwise – have no bearing on jurisdiction over Citivic.

Finally, even if minimum contacts were satisfied, exercising jurisdiction would be unreasonable under the circumstances and is therefore impermissible. The majority (if not all) of relevant records are overseas in the BVI, the United Kingdom, or the Netherlands where the Fund's administrator is alleged to have calculated the NAV. The United States has little to no interest in adjudicating this foreign law claim between foreign parties for the recovery of purely foreign payments under a foreign law contract. The federal court system only has subject-matter jurisdiction over the case because the claim is related to a Chapter 15 ancillary case that Plaintiffs filed solely for the purpose of forum-shopping. See, e.g., In re Fairfield Sentry Ltd., 458 B.R. 665, 686 (S.D.N.Y. 2011) (Preska, J.) ("The purpose of a Chapter 15 case is to aid foreign jurisdictions in administering bankruptcies by preventing debtors from squirreling away assets in the United States. It is not to take over as the center stage for the proceedings. The cases under the same legal theories could have been (and were) brought in the BVI proceedings.") (internal citations omitted).[4] After the Privy Council, the court of last resort in the BVI, affirmed dismissal of the liquidators' BVI law claims in 2014, Plaintiffs discontinued the remaining BVI actions beginning in 2016 and began prosecuting the New York actions under a new theory.[5]

---

[4] See also In re Fairfield Sentry Ltd., 458 B.R. at 677 ("Nowhere in the complaints, Plaintiffs' papers, Defendants' papers, or at oral argument can there be found a non-frivolous reference to any assets sought that are located within the territorial jurisdiction of the United States or in possession of a U.S. domiciled defendant.").
[5] In the BVI courts, the liquidators unsuccessfully litigated on a "mistaken" payment theory, premised on the Fund's alleged miscalculation of their NAV. The liquidators lost those claims at all levels of the BVI court system. See Fairfield Sentry Ltd. (in Liquidation) v. Migani [2014] UKPC 9 ¶ 23 (concluding the Liquidators' approach is "an impossible construction"). They also lost on their claim that redeeming investors did not give good consideration for the redemptions. See generally id.

Even Plaintiffs' interest in litigating in this forum is low. They have proffered no reason why the United States is more reasonable than their home jurisdiction of the BVI or Citivic's home jurisdiction of the United Kingdom. Finally, the burden on Citivic litigating in New York is significant. The witnesses and records in this action are all overseas, and Citivic has obligations under foreign law. Discovery in these actions may potentially expose Citivic to civil and criminal penalties in its home jurisdiction.

For these reasons, Citivic should be dismissed from the action for lack of personal jurisdiction.

## BACKGROUND

Citivic is a purported beneficial holder of accounts held by Zurich Capital, which is alleged to have invested in Sentry, a "feeder fund" for BLMIS. ZCM Fourth Am. Compl. ¶¶ 2-3, 16. The Fund, which is organized under BVI law, sold shares to foreign investors in accordance with its Articles. To purchase shares in the Fund, certain investors were required to sign subscription agreements. *Id.* ¶ 22. The terms of their investments, including the redemption rights, were not governed by the subscription agreements, however, but by the Articles. *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 2016 WL 6900689, at *15 (Bankr. S.D.N.Y. Nov. 22, 2016) ("[T]he Privy Council in *Fairfield Sentry* ruled that the redemptions were governed by the Articles of Association and BVI law."). The Articles granted investors the right to redeem their shares at a price equal to the Fund's NAV, which was calculated based on the value of the Fund divided by its outstanding shares. ZCM Fourth Am. Compl. ¶ 8. The Fund's NAV was calculated by its administrator, Citco Fund Services (Europe) B.V. and its delegate Citco (Canada) Inc. (together, "Citco"), which issued NAV statements to shareholders on behalf of the Fund. *Id.* ¶¶ 60, 200. Following a redemption request, the Fund was required to

6

pay the redeeming shareholder an amount based on the NAV in return for the redemption of the shares. *Id.* ¶¶ 8, 245.

In December 2008, BLMIS's fraud was revealed, and in April 2009 the Fund entered liquidation proceedings before the BVI High Court of Justice, Commercial Division. *Id.* ¶¶ 26, 231-37. Between October 2009 and March 2010, Plaintiffs commenced actions in the BVI against a number of the Fund's alleged investors seeking restitution on the theory that the Fund mistakenly made redemption payments prior to BLMIS's collapse, and contemporaneously, and since, have brought more than 300 actions in the United States against a partially overlapping group of defendants with overlapping theories of liability.

Plaintiffs initiated this action in New York state court on August 13, 2010 and removed to this Court on September 21, 2010. The complaint named as defendants Zurich Capital, Citivic, thirteen other defendants,[6] and 1,000 unnamed "beneficial owners" of Zurich Capital. Dkt. No. 1-2. It sought recovery of redemption payments that Zurich Capital allegedly received from the Fund before December 2008 totaling $13.4 million. That complaint was amended on September 21, 2010 to add five additional defendants and to allege that Zurich Capital received redemption payments totaling $15.1 million between April 21, 2004 and August 14, 2006. Dkt. No. 4 ¶ 24. With respect to Citivic, the amended complaint only alleged: "Upon information and belief, Zurich may have paid to or credited some or all of the Redemptions Payments received by it to accounts of Beneficial Shareholders." *Id.* ¶ 40.

---

[6] The complaint also named Citigroup as a defendant, but Plaintiffs dismissed the claims against Citigroup without prejudice on October 16, 2012. Dkt. No. 67. The allegations against a third Citi defendant, Citibank (Switzerland) AG, are addressed in a motion to dismiss for lack of personal jurisdiction that is being filed separately and concurrently with this motion, in light of the Court's scheduling order on personal jurisdiction brief that states: "[A] separate motion must be filed by each Defendant in each adversary proceeding." Dkt. No. 326.

Plaintiffs then amended the complaint for a second time on January 10, 2011, again on August 7, 2012, again on January 9, 2020, and again on August 11, 2021.[7] Despite these amendments, Plaintiffs' complaint has never pled any specific transfer received by Citivic – not a single sum, not a single date. Plaintiffs' claim against Citivic rests entirely on speculation that it may have received payments from Zurich Capital.[8]

Now on its fifth iteration, the Fourth Amended Complaint has failed to advance beyond its 2010 personal jurisdiction allegations against Citivic. *See* ZCM Fourth Am. Compl. ¶¶ 41, 65-67. Indeed, the Fourth Amended Complaint continues to plead: "Upon information and belief, Zurich Capital *may have* paid some or all of the Redemption Payments it received to the Beneficial Shareholders." *Id.* ¶ 251 (emphasis added). Its "new" personal jurisdiction allegations provide no further substance:

- "Zurich Capital and the Beneficial Shareholders purposely availed themselves of the laws of the United States and the State of New York by, among other things, investing money with the Funds, knowing and intending that the Funds would invest substantially all of that money in New York-based BLMIS, and maintaining bank accounts in the United States at Citibank NA, and in fact receiving Redemption Payments in those

---

[7] The operative complaint is called the "Fourth Amended Complaint," but constitutes the fifth amendment following Plaintiffs' original filing of the case in state court on August 13, 2010. *See* Compl., *Fairfield Sentry Limited v. Zurich Cap. Mkts Co.*, No. 650315/2010 (Aug. 13, 2010), NYSCEF Doc. No. 4; Am. Compl. (Sept. 21, 2010), Dkt. No. 4; First Am. Compl. (Jan. 10, 2011), Dkt. No. 42; Second Corr. Am. Compl. (Aug. 7, 2012), Dkt. No. 64; Third Am. Compl. (Jan. 9, 2020), Dkt. No. 237; ZCM Fourth Am. Compl. (Aug. 11, 2021), Dkt. No. 313.

[8] Citivic first moved to dismiss for lack of personal jurisdiction in 2017. *See, e.g.*, Citi Defs' Supp. Mem. of Law in Opp'n to Pls' Mot. for Leave to Amend and in Supp. of Defs' Mot. to Dismiss, *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, Adv. Pro. No. 10-3496 (Bankr. S.D.N.Y. Jan. 27, 2017), Dkt. No. 1153; *see also* Citi Defs' Supp. Reply Mem. of Law in Opp'n to Pls' Mot. for Leave to Amend and in Supp. of Defs' Mot. to Dismiss, *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, Adv. Pro. No. 10-3496 (Bankr. S.D.N.Y. June 9, 2017), Dkt. No. 1544.

Because of the stay and other procedural orders entered during this litigation by Judges Lifland and Bernstein, that was the first opportunity for Citivic to challenge personal jurisdiction. Those 2017 motions have never been fully resolved, and since 2017 there have been a number of stipulated orders preserving the defense. *See, e.g.*, Order and Stipulation ¶ 3, *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, Adv. Pro. No. 10-3496 (Bankr. S.D.N.Y. Sept. 20, 2018), Dkt. No. 1735; Scheduling Order ¶ 4, *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, Adv. Pro. No. 10-3496 (Bankr. S.D.N.Y. Mar. 20, 2020), Dkt. No. 2926; Scheduling Order ¶ 5, *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, Adv. Pro. No. 10-3496 (Bankr. S.D.N.Y. Apr. 14, 2020), Dkt. No. 3028; Order Extending Defendants' Time to Answer, Move, or Otherwise Respond to the Amended Complaints, *Fairfield Sentry Ltd. v. Zurich Cap. Mkts. Co.*, Adv. Pro. No. 10-3634 (Bankr. S.D.N.Y. Aug. 25, 2021), Dkt. No. 314.

United States-based and/or New York-based accounts." *Id.* ¶ 20.[9]

- "Zurich Capital and the Beneficial Shareholders selected U.S. dollars as the currency in which to invest and execute their transactions in Sentry, designated United States-based and/or New York-based bank accounts to receive their Redemption Payments from the Funds, and actively directed Redemption Payments at issue in this action into those bank accounts." *Id.*

- "Zurich Capital and the Beneficial Shareholders thus knowingly accepted the rights, benefits, and privileges of conducting business and/or transactions in the United States and New York, derived significant revenue from New York, and maintained minimum contacts and/or general business contacts with the United States and New York in connection with the claim alleged herein. Zurich Capital and the Beneficial Shareholders should therefore reasonably expect to be subject to United States jurisdiction." *Id.*

- "[T]his Court has jurisdiction over Zurich Capital and any Beneficial Shareholders by virtue of the legally binding and valid agreements and representations set forth in one or more agreements for the subscription of Shares that Zurich Capital entered into with Sentry." *Id.* ¶ 21. As discussed *supra*, this basis for personal jurisdiction was rejected in *Fairfield I.*

- "Based on Sentry records, some or all of the Redemption Payments made to Zurich Capital may have been paid to an account holder or holders associated with the Beneficial Shareholder, Citivic Nominees Limited. Upon information and belief, Citivic Nominees Limited is a corporate entity organized under the laws of the United Kingdom and has its registered address at Citigroup Centre, Canada Square, Canary Wharf, London, E14 5LB, United Kingdom." *Id.* ¶ 41.

- The redemption payments from Sentry were sent to Zurich Capital's bank account in New York. *Id.*, Ex. A.

None of these statements, individually or collectively, comes close to alleging personal

jurisdiction over Citivic.

## ARGUMENT

As this Court previously held, Citivic did not consent to *in personam* jurisdiction in this

Court. *See Fairfield I*, 2018 WL 3756343, at *12. Accordingly, Plaintiffs must identify some

---

[9] Plaintiffs also add a new allegation, in a footnote to an exhibit, that Citco, the Fund's administrator, maintained a correspondent account. *See* ZCM Fourth Am. Compl., Ex. A ("Whether or not Redemption Payments were ultimately directed to bank accounts in the United States, all Redemption Payments from Sentry went through a correspondent bank account that Sentry's administrator [Citco] maintained in the United States.").

basis other than consent to carry their "burden of establishing jurisdiction over the defendant."

*Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 334 (2d Cir. 2016) (quoting *Koehler v.*

*Bank of Berm. Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996)). Plaintiffs must make this showing with

respect to "each defendant," *Langenberg v. Sofair*, 2006 WL 2628348, at *6 (S.D.N.Y. Sept. 11,

2006), and to the specific claim asserted in the action, *see Sonterra Cap. Master Fund Ltd. v.*

*Credit Suisse Grp. AG*, 277 F. Supp. 3d 521, 586 (S.D.N.Y. 2017) (citing *Sunward Elec., Inc. v.*

*McDonald*, 362 F.3d 17, 24 (2d Cir. 2004)). At the motion to dismiss stage, Plaintiffs have the

pleading burden and "must make a prima facie showing that jurisdiction exists" consistent with

due process. *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 81 (2d Cir. 2018)

(internal quotation marks omitted).

Plaintiffs do not allege that the Court has general jurisdiction over Citivic, who is not "at

home" in the United States, and so Plaintiffs must plead facts supporting the exercise of specific

jurisdiction over it. *See Daimler AG v. Bauman*, 571 U.S. 117, 136-37 (2014). To do so,

Plaintiffs must assert (1) their claim arises out of the Citivic's sufficient "minimum contacts with

the relevant forum," and (2) "the exercise of jurisdiction is reasonable in the circumstances." *In*

*re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (internal quotation

marks omitted). The minimum contacts inquiry focuses on "the relationship among the

defendant, the forum, and the litigation," a relationship that "must arise out of contacts that the

defendant himself creates with the forum State." *Walden*, 571 U.S. at 284 (internal quotation

marks omitted). Plaintiffs have failed to meet this pleading burden.

## A.    Citivic's Alleged Contacts With The Forum Are Insufficient To Establish Personal Jurisdiction

Plaintiffs neither allege "minimum contacts" sufficient to constitute a "substantial

connection" between Citivic and the United States, nor do they establish that Citivic engaged in

conduct "purposefully directed" toward the forum to support the exercise of specific personal

jurisdiction. *Waldman*, 835 F.3d at 338. Moreover, Plaintiffs' only remaining claim – a claim

for constructive trust arising from knowing receipt under BVI law – does not "arise out of or

relate to" conduct in the United States. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73

(1985).

The sole conduct relevant to Plaintiffs' remaining constructive trust claim is the receipt of

redemptions by Zurich Capital from the BVI-based feeder fund Sentry. ZCM Fourth Am.

Compl. ¶¶ 243-55. But those redemption payments were indisputably made by a *foreign* fund

through its *foreign* administrator pursuant to *foreign*-law governed contracts. *See id.* ¶¶ 8, 200,

204. Nor did the Fund or its administrator make any of those redemption payments to Citivic.

Accordingly, Zurich Capital's alleged "suit-related conduct" – the knowing receipt of those

redemptions – unambiguously fails to create "a substantial connection with the forum State" for

Citivic, especially where Plaintiffs fail to allege that Citivic received subsequent payments.

*Walden*, 571 U.S. at 284; *see also Bristol-Myers Squibb v. Super. Ct. of Cal.*, 137 S. Ct. 1773,

1781 (2017) (declining to exercise personal jurisdiction where "[w]hat is missing . . . is a

connection between the forum and *the specific claims at issue*") (emphasis added). In the

absence of this requisite connection, Plaintiffs strain to conjure relevant U.S. contacts sufficient

to support jurisdiction. Their efforts fail.

### 1.    Plaintiffs Fail To Plead A Prima Facie Case Of Personal Jurisdiction Over Citivic

Plaintiffs fail to plead a *prima facie* case of jurisdiction or even make a "sufficient start"

towards establishing jurisdiction over Citivic. *Stratagem Dev. Corp. v. Heron Int'l N.V.*, 153

F.R.D. 535, 547 (S.D.N.Y. 1994). On a Rule 12(b)(2) motion to dismiss for lack of personal

jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction and that its

position is not frivolous.  *See id.*; *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996).  "Such a showing entails making legally sufficient allegations of jurisdiction, including an averment of facts that, if credited[,] would suffice to establish jurisdiction over the defendant."  *Charles Schwab*, 883 F.3d at 81 (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34-45 (2d Cir. 2010)).

Citivic, which is not alleged to have received transfers from the Fund or its foreign administrator, is alleged to be liable in this case exclusively on the basis that it received payments abroad from Zurich Capital, who itself is foreign.  The only potential connection with New York is the vague allegation grouping Citivic with Zurich Capital and other alleged beneficial shareholders and asserting that they all received the payments in "United States-based and/or New York-based accounts."  ZCM Fourth Am. Compl. ¶ 20.  Yet Plaintiffs list only a New York-based Citibank NA bank account where *Zurich Capital* supposedly received redemption payments from the Fund and which is not alleged to have any connection to Citivic.  *Id.* ¶ 67; *see Rush v. Savchuk*, 444 U.S. 320, 332 (1980) (plaintiff must allege a basis for jurisdiction with respect to *each defendant*).  There is no attempt to even plead how that bank account – located in a different country and owned by Zurich Capital – is connected to Citivic, nor is it alleged to have used that account.  Plaintiffs' "bland assertion[s] . . . [are] insufficient to establish jurisdiction" where there "are no allegations of specific facts which would connect [Citivic] with any New York activity."  *Lehigh Val. Indus., Inc. v. Birenbaum*, 527 F.2d 87, 93-94 (2d Cir. 1975).  Plaintiffs plead no connection between Citivic and the United States with respect to the purported "payments" that "may" have occurred.  ZCM Fourth Am. Compl. ¶¶ 40-41, 251.

Plaintiffs cannot remedy such deficient pleading by relying on the prospect of jurisdictional discovery. Plaintiffs are not entitled to engage in a fishing expedition in order to see whether Citivic "may" have received some of the redemption payments from Zurich Capital. *Id.*; *see RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 402 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010) ("Discovery need not be granted to allow plaintiff to engage in an unfounded fishing expedition for jurisdictional facts" where plaintiffs "failed to allege a prima facie case of personal jurisdiction" and "have made no factual allegations which could be proven through additional discovery that would change the outcome of this issue") (citation omitted). Where a plaintiff fails to allege a *prima facie* case of personal jurisdiction, the court should exercise its discretion to deny jurisdictional discovery. *See In re Teligent, Inc.*, 2004 WL 724945, at *6 (Bankr. S.D.N.Y. Mar. 30, 2004) ("Here, the plaintiff failed to demonstrate that she should be entitled discovery because she failed to allege a *prima facie* case of personal jurisdiction."); *see also Ehrenfeld v. Mahfouz*, 489 F.3d 542, 550 n.6 (2d Cir. 2007) (stating a district court does not err in exercising its discretion to deny jurisdictional discovery where a plaintiff fails to establish a *prima facie* case); *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 186 (2d Cir. 1998) ("Since the [plaintiffs] did not establish a prima facie case that the district court had jurisdiction over [the defendant], the district court did not err in denying discovery on that issue."); *Frontera Res. Azer. Corp. v. State Oil Co. of Azer. Republic*, 582 F.3d 393, 401 (2d Cir. 2009) ("[A court] is typically within its discretion to deny jurisdictional discovery when 'the plaintiff [has] not made out a prima facie case for jurisdiction.'") (quoting *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 255 (2d Cir. 2007)).

While a court may exercise its discretion to award jurisdictional discovery, a plaintiff must, at a minimum, have made a "sufficient start" toward establishing jurisdiction or a

"threshold showing that there is some basis for the assertion of jurisdiction." *Ayyash v. Bank Al-Madina*, 2006 WL 587342, at *6 (S.D.N.Y. Mar. 9, 2006) (complaint alleged dates, amounts, bank names, and bank locations for wire transfers made by each defendant into their U.S. bank accounts); *see Eternal Asia Supply Chain Mgmt. (USA) Corp. v. Chen*, 2013 WL 1775440, at *10 (S.D.N.Y. Apr. 25, 2013) ("[V]ague allegation that [defendant]'s business venture in California . . . *could have* included New York State" gave no "reason even to speculate that Plaintiff could reveal further connections to New York State during jurisdictional discovery") (emphasis added); *see also NovelAire Techs., L.L.C. v. Munters AB*, 2013 WL 6182938, at *13 (S.D.N.Y. Nov. 21, 2013) ("The failure to make out a *prima facie* case does not always bar such discovery. However, if the plaintiff offers only speculations or hopes . . . that further connections to [the forum] will come to light in discovery, the court should dismiss the complaint without allowing discovery.") (internal citation and quotation marks omitted). Plaintiffs have made no such start here. The only allegations regarding the redemption payments concern Zurich Capital and its alleged correspondent bank account in New York. Plaintiffs' non-specific allegations are insufficient to obtain jurisdictional discovery from Citivic and are wholly inadequate for pleading personal jurisdiction.

> ## 2.     The Fund's Investment In BLMIS Does Not Establish Personal Jurisdiction Over Citivic

Plaintiffs do not plead that Citivic purposefully availed itself of New York. The closest they come is their conclusory contention that as a beneficial shareholder of Zurich Capital, Citivic invested with the Fund while purportedly "knowing and intending that the Funds would invest substantially all of [its] money" in BLMIS in New York. ZCM Fourth Am. Compl. ¶ 20. But even if it could be said that Citivic knew and intended its investment with Zurich Capital to lead to the Fund's investment in BLMIS, the allegation is irrelevant. Plaintiffs' knowing receipt

claim is not predicated on the funds ever having been placed with or controlled by BLMIS. Nor does that claim focus on the decision to *invest* with the Fund as the basis for either liability or jurisdiction. Rather, the claim is predicated solely on Zurich Capital having requested and *received* money from the Fund. Plaintiffs do not allege that those redemption requests were executed in the United States or that the conduct underlying their claim occurred or resulted in injuries in the United States. Nor could they. Plaintiffs' claim for knowing receipt relates to and arises out of the allegedly mistaken calculation of the NAV by the Fund's foreign administrator, Citco, and the Fund's subsequent disbursement of redemption payments abroad on the basis of those calculations. *See id.* ¶¶ 200, 224, 242, 253.

The allegation that the Fund used the proceeds of sales of its own securities to fund *its own* investments with BLMIS does not establish personal jurisdiction – even if Citivic somehow knew it planned to do so. The Fund is not alleged to have been an agent of Zurich Capital or Citivic, and the money invested with BLMIS is not alleged to belong to Citivic. Personal jurisdiction must be premised on the *defendant's* conduct, not that of third parties. "The 'substantial connection' between the defendant and the forum State necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum State*." *Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal.*, 480 U.S. 102, 112 (1987) (emphasis in original); *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 344 (2d Cir. 2018) (whether personal jurisdiction lies "depends on the relationship among *the defendant*, the forum, and the litigation") (internal quotation marks omitted) (emphasis added); *In re Fairfield Sentry Ltd.*, 627 B.R. 546, 566 (Bankr. S.D.N.Y. 2021) (Morris, C.J.) (requiring plaintiff to plead that the *defendant* created the substantial connection to the forum to satisfy the purposeful availment

prong).[10]  The Supreme Court has "consistently rejected attempts to satisfy this defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third-parties) and the forum State." *Walden*, 571 U.S. at 284.  Thus the *Fund*'s investment in New York-based BLMIS is not a basis for personal jurisdiction over *Citivic*, who is concededly thrice removed from that investment.  *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction.").

In any event, the allegation that money placed with the Fund may have – but did not necessarily[11] – make its way to BLMIS is not a basis for asserting personal jurisdiction; it is nothing more than the type of "stream of commerce" theory of personal jurisdiction rejected by the Supreme Court.  *See J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 882 (2011) ("[I]t is not enough that [a] defendant might have predicted that its goods will reach the forum," but rather must "engage[] in conduct purposefully directed at [the forum]"); *In re Mexican Gov't Bonds Antitrust Litig.*, 2020 WL 7046837, at *3-4 (S.D.N.Y. Nov. 30, 2020) (holding that neither an attempt to profit from conduct underlying the claim nor the foreseeability of a harm in the forum could establish jurisdiction in the absence of a defendant's contact with the forum).

---

[10] The connections between the United States and Citivic are far more attenuated than defendants in other suits involving BLMIS feeder funds in which the court has held that it has personal jurisdiction over those defendants. For example, the defendants in *In re Fairfield Sentry Limited*, who actually managed the Fund, were alleged to have performed risk management for the Fund in New York, regularly spoken to BLMIS, shared offices with the Fund's New York headquarters, attended Fund meetings in New York, or have formed equivalent contacts with the United States. *In re Fairfield Sentry Ltd.*, 627 B.R. at 566-69. There are no such allegations here linking the conduct of Citivic to the forum state.

[11] *See, e.g.*, ZCM Fourth Am. Compl. ¶ 62 (alleging that the redemption payments also comprised "subscription monies from other investors in the Fund" and were "used as a shortcut to investing subscription monies with BLMIS").

16

Notably, this case is very different from *Picard v. Bureau of Labor Insurance (In re Securities Investor Protection Corp.)*, 480 B.R. 501 (Bankr. S.D.N.Y. 2012) ("BLI"), in which Judge Lifland held that a defendant's investment with the Fund was sufficient to establish personal jurisdiction *with respect to claims arising from the liquidation of BLMIS*. In that case, the allegations concerned transfers to the defendant by BLMIS from New York, and the court held that the defendant's decision to invest in a fund that would ultimately invest with Madoff gave rise to personal jurisdiction with respect to claims arising from that *Madoff* investment. But Plaintiffs' claim in this case does not arise from the Madoff investment; it arises from the redemption payments made by the Fund from the BVI to Zurich Capital and then allegedly from Zurich Capital to Citivic. It is not credible that Citivic would have understood itself to be submitting to U.S. jurisdiction with respect to BVI claims related to foreign-based Zurich Capital and foreign-based Sentry.[12]

### 3.    The Use Of U.S. Currency And Designation Of U.S. Accounts To Receive Redemption Payments Do Not Establish Personal Jurisdiction

Plaintiffs also allege that minimum contacts are established because Zurich Capital and its beneficial shareholders "selected U.S. dollars as the currency in which to invest and execute their transactions in Sentry" and "designated United States-based bank accounts to receive their Redemption Payments from the Funds and actively directed Redemption Payments . . . into those bank accounts." ZCM Fourth Am. Compl. ¶ 20.

The Fourth Amended Complaint does not identify a U.S. bank account as having received subsequent payments for Citivic. This shortfall alone is a basis to find personal jurisdiction is lacking as to Citivic. Plaintiffs list only a New York-based Citibank NA account

---

[12] And in any event, Judge Lifland's holding in *BLI* is drawn into question by the Supreme Court's subsequent holding in *Walden*.

where Zurich Capital supposedly received redemption payments from the Fund, but not where Citivic received the funds. *Id.* ¶ 67. Nor do they allege that Zurich Capital used this New York account to transfer funds to Citivic. And even if they did, the nature of Zurich Capital's bank account – whether a correspondent bank account or otherwise – is irrelevant to jurisdiction over Citivic because jurisdiction is based on the "contacts that the defendant himself creates with the forum State," and not by others. *Walden*, 571 U.S. at 284.

In a footnote to an exhibit to the Fourth Amended Complaint, Plaintiffs argue that defendants who *did not* receive payments into U.S.-based accounts can nonetheless be subject to personal jurisdiction because – Plaintiffs assume – those payments may have traveled through U.S.-based correspondent accounts on their way to defendants' foreign accounts. *See* ZCM Fourth Am. Compl., Ex. A ("[T]o the extent that any such Redemption Payments were directed outside the United States, they went through a correspondent bank account in the United States identified by shareholders for such payments."). But this incidental and non-purposeful conduct does not establish personal jurisdiction in this Circuit.

It was the *Fund*, not Citivic, that through its BVI-law governed Articles designated U.S. dollars as the "Base Currency" for payments to investors. *See* Dkt. No. 81-6 (Sentry Articles, arts. 1, 10(1)(c) (defining "Base Currency" as "the currency of the United States of America" and stating "payment shall be made to the Applicant in the Base Currency in respect of the redemption or purchase of Shares")).[13] As explained above, the *Fund*'s decisions and acts cannot serve as the predicate for personal jurisdiction over Citivic. *See Walden*, 571 U.S. at 284; *Helicopteros*, 466 U.S. at 417.

---

[13] Plaintiffs submitted the Articles with the Declaration of William Hare in support of their motion for leave to file an amended complaint. *See* Dkt. No. 81-6. Plaintiffs also quote directly from the Articles in their Fourth Amended Complaint. *See* ZCM Fourth Am. Compl. ¶¶ 79, 200; *see also id.* ¶¶ 59-60, 62, 78.

Moreover, the receipt of funds into a bank account is not sufficient to support personal jurisdiction where the account is maintained "merely to ensure compliance with contract terms negotiated and executed outside of [the forum.]" *Hau Yin To v. HSBC Holdings PLC*, 2017 WL 816136, at *5 (S.D.N.Y Mar. 1, 2017), *aff'd*, 700 F. App'x 66 (2d Cir. 2017). "Courts in this district have routinely held that merely maintaining a New York correspondent bank account is insufficient to subject a foreign bank to personal jurisdiction," *Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 727 (S.D.N.Y. 2010) (citing cases); *see also Al Rushaid v. Pictet & Cie*, 68 N.E. 3d 1, 16-17 (N.Y. 2016) (confirming that "coincidental" use of a correspondent account is an insufficient jurisdictional basis), as foreign banks conducting business in the United States typically maintain accounts at U.S. banks simply to effect dollar transactions. *See generally Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1395 (2018) ("In New York each day, on average, about 440,000 [dollar-clearing] transfers occur, in dollar amounts totaling about $1.5 trillion.").

The redemption payments at issue indisputably went from one foreign party to another to another; the origin and destination of the funds were abroad. As such, the parties to these transactions never expected this technicality to land their dispute in U.S. court. Were the incidental use of U.S.-based accounts sufficient to confer personal jurisdiction over foreign entities, New York would become a clearinghouse for any foreign commercial dispute, merely because global transactions are frequently cleared in U.S. dollars. *See Mashreqbank PSC v. Ahmed Hamad Al Gosaibi & Bros. Co.*, 12 N.E.3d 456, 459-60 (N.Y. 2014) ("Our state's interest in the integrity of its banks . . . is not significantly threatened every time one foreign national, effecting what is alleged to be a fraudulent transaction, moves dollars through a bank in New York."); *Universal Trading & Inv. Co. v. Tymoshenko*, 2012 WL 6186471, at *3 (S.D.N.Y. Dec.

19

12, 2012) ("[C]ourts have long recognized that there are significant policy reasons which caution against the exercise of personal jurisdiction based only on . . . a correspondent bank account.").

Accordingly, rather than rely simply on the maintenance of a correspondent account, courts in this Circuit typically assess both the frequency and deliberateness with which the accounts were used, neither of which supports conferring jurisdiction here. *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013) (noting that the New York Court of Appeals found that "the frequency and deliberate nature" of the use of correspondent accounts is determinative of whether personal jurisdiction lies); *see also Vasquez v. Hong Kong & Shanghai Banking Corp., Ltd.*, 477 F. Supp. 3d 241, 255-58 (S.D.N.Y. 2020) (finding that foreign banks' use of correspondent accounts was insufficiently deliberate to subject it to personal jurisdiction).

There is no allegation that such accounts were (1) frequently used (or used at all by Citivic), or (2) in any way necessary to the alleged fraud. Correspondent accounts which process U.S. dollar transactions are available in countries around the world. *See Tamam*, 677 F. Supp. 2d at 729 (noting that foreign entities can leverage U.S. dollar correspondent accounts throughout Europe, Asia, and Africa). Because the use of any such accounts would be "merely incidental" to decisions made abroad and "not specifically directed by any of the [] entities to facilitate the Ponzi scheme," *Hau Yin To*, 2017 WL 816136, at *7 n.6, these alleged contacts are insufficient to establish personal jurisdiction over Citivic. *See id.* (rejecting personal jurisdiction over foreign defendants because their alleged connection to the forum was the transmission of funds "to and from BLMIS . . .[as an] incidental consequence[] of fulfilling a foreign contract"); *see also SPV*, 882 F.3d at 345 (finding a "handful of communications and transfer of funds . . . are insufficient to allow the exercise of specific personal jurisdiction over the [Foreign]

20

Defendants"); *Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333, 340 (S.D.N.Y. 2016) (finding the transmission of information and funds to and from BLMIS to be "incidental consequences of fulfilling a foreign contract . . . insufficient to 'project' the Foreign Defendants into New York" and "not amount to 'purposeful availment' of the laws of" the forum).

Plaintiffs advance a related argument – buried in a footnote to an exhibit – that the Fund's own administrator used a correspondent account to transfer the redemption payments to Zurich Capital. *See* ZCM Fourth Am. Compl., Ex. A ("Whether or not Redemption Payments were ultimately directed to bank accounts in the United States, all Redemption Payments from Sentry went through a correspondent bank account that Sentry's administrator [Citco] maintained in the United States."). This allegation speaks to foreign third-party Citco's purported contact with the forum that has no nexus to Plaintiffs' claim. There is also no allegation that Citivic was involved in the selection of this correspondent account by the Fund's administrator. The fact that Citco – who is not alleged to have transferred any funds to Citivic – unilaterally may have chosen to use a correspondent account is irrelevant to whether the Court may exercise jurisdiction over Citivic because jurisdiction must be based on the *defendant's* contacts with the forum, not the plaintiff's. *See Walden*, 571 U.S. at 284; *Helicopteros*, 466 U.S. at 417. Moreover, Plaintiffs fail to corroborate this allegation in their action against Citco, where they plead Citco's use of these U.S.-based bank accounts "on information and belief." Citco Am. Compl. ¶ 19, *Fairfield Sentry Ltd. (In Liquidation), et al. v. Citco Glob. Custody NV, et al.*, Adv. Pro. No. 19-01122 (Bankr. S.D.N.Y. Nov. 26, 2019). The facts of where Citco received redemption payments *from Sentry itself* are not "peculiarly within the possession and control of the defendant" Citivic or "based on factual information that makes the inference of culpability plausible." *In re Caisse*, 568 B.R. 6,

13 n.5 (Bankr. S.D.N.Y. 2017) (Bernstein, J.) (internal quotation marks omitted).  Nor are these

allegations "accompanied by a statement of the facts upon which the belief is founded." *Id.*

Even if the selection of the Base Currency and the incidental payments into U.S.-based

accounts could establish the requisite connection to the forum, Plaintiffs' claim does not arise out

of or relate to that conduct.  Both alleged bases for jurisdiction were incidental results of

decisions made by the Fund pursuant to a foreign-law governed contract executed abroad.  *See*

*Hau Yin To*, 2017 WL 816136, at *7 n.6; *Al Rushaid*, 68 N.E.3d at 11.  Because the Fund's

purported injuries were entirely unrelated to the choice of the currency used or the accounts in

which investments were received, this Court cannot exercise personal jurisdiction over Citivic.

*See Walden*, 571 U.S. at 284.

## B.  The Exercise Of Personal Jurisdiction Over Citivic Would Be Unreasonable

Compounding the absence of sufficient minimum contacts with the forum or their

connection to the Plaintiffs' claim, the Court's exercise of personal jurisdiction over Citivic

would be unreasonable and contrary to "traditional notions of fair play and substantial justice."

*Metro. Life*, 84 F.3d at 578 (quoting *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945)).  "The

Due Process Clause . . . gives a degree of predictability to the legal system that allows potential

defendants to structure their primary conduct with some minimum assurance as to where that

conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp. v.*

*Woodson*, 444 U.S. 286, 297 (1980) (citation omitted).  Here, where Citivic's purported contacts

with the United States arose from actions that were taken by foreign entities on foreign soil

pursuant to foreign contracts, its conduct and connection with the forum are not such that it

should have "reasonably anticipate[d] being haled into court." *Id.* The inequity of exercising

personal jurisdiction over Citivic here is particularly blatant as Plaintiffs can (and have, albeit

unsuccessfully) taken advantage of an alternative forum in the BVI.

In evaluating the reasonableness of exercising personal jurisdiction, "[a] court must consider the burden on defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." *Asahi*, 480 U.S. at 113-14. "[T]he weaker the plaintiff's showing on minimum contacts, the less a defendant needs to show in terms of unreasonableness to defeat jurisdiction." *In re CIL Limited*, 582 B.R. 46, 79 (Bankr. S.D.N.Y. 2018) (citation omitted); *see also Porina v. Marward Shipping Co.*, 2006 WL 2465819, at *6 (S.D.N.Y. Aug. 24, 2006) ("[I]f a defendant's contacts with the United States are weak, the plaintiff has to make a stronger showing of reasonableness in order to show that jurisdiction over the defendant is proper."). Each of the *Asahi* factors weighs against exercising personal jurisdiction here.

*First*, defending Plaintiffs' actions before this Court would impose substantial burdens on Citivic, as "none of [its] records, files, or witnesses with information about the litigation are located" in the United States. *Metro. Life*, 84 F.3d at 574. This holds true despite the availability of modern technology, which might reduce this burden, but does not eliminate it. *See id.* ("[T]his factor cuts slightly in favor of the defendant"); *Thorsen v. Sons of Norway*, 996 F. Supp. 2d 143, 159 (E.D.N.Y. 2014) (finding the burden of traveling to New York had diminished in the modern age but was still an "important factor"). Moreover, Citivic hales from the United Kingdom where discovery of such documents would potentially expose it to civil or criminal liability.[14]   After Judge Preska directed this Court to perform a comity analysis before deciding whether to proceed with discovery in this action, this Court held that a conflict existed between U.S. discovery and U.K. law. It found that "yielding to [Plaintiffs'] Disclosure Request implicate[d] the significant bank customer confidentiality laws of no fewer than 30 countries,"

---

[14] For example, Regulation (EU) 216/679 (Apr. 27, 2016) (the General Data Protection Regulation) and the UK Data Protection Act 2018, as amended on January 1, 2021, restrict the disclosure of information relating to any identified or identifiable natural person.

including United Kingdom, and that "the competing interests of the nations whose laws are in

conflicting . . . militate[d] heavily in favor of" defendants. Bench Ruling Granting in Part and

Denying in Part the Foreign Representatives Motion Seeking Limited Relief, *Fairfield Sentry*

*Ltd, v. Theodoor GGC Amsterdam*, Adv. Pro. No. 10-3496 (Bankr. S.D.N.Y. July 19, 2012), Dkt.

No. 799-2 (Lifland, J.).

  *Second*, the United States' lesser interest in adjudicating disputes between *foreign* parties

arising under *foreign* law further cautions against exercising jurisdiction. *Asahi*, 480 U.S. at

114-15. Had Plaintiffs not filed a petition for Chapter 15 recognition, there would be no subject

matter jurisdiction in federal court over this claim for what is essentially a private dispute

between foreign parties. *In re Fairfield Sentry Ltd.*, 458 B.R. at 685 ("[T]hese claims are

disputes between two private parties that have existed for centuries and are 'made of the stuff of

the traditional actions at common law tried by the courts at Westminster in 1789.'") (citation

omitted). The claim for knowing receipt is itself non-core and there are no alleged debtor assets

in the United States. *Id.* at 682  ("Here, there are no assets in the United States. Plaintiffs'

actions seek assets, so their location is relevant. Plaintiffs do not seek discovery or stays of

proceedings in the United States. Thus, the ancillary character of the Chapter 15 cases here is at

a low ebb—it is certainly not within the core jurisdiction of the bankruptcy court to aid the BVI

courts in these cases because there are no assets sought in the United States.") (emphasis added).

The Supreme Court has cautioned against finding jurisdiction over such a claim between *foreign*

parties arising under *foreign* law. *See Asahi*, 480 U.S. at 115 ("Great care and reserve should be

exercised when extending our notions of personal jurisdiction into the international field.").

  *Finally*, Plaintiffs have not demonstrated that it is more convenient for them to litigate

their claim against Citivic in New York rather than in the BVI. *See id.* at 114. Indeed, Plaintiffs

initially chose the BVI as the preferable and most convenient forum to pursue their claim. Only upon losing at the highest level in the BVI court system did Plaintiffs then discontinue their suits in that forum, instead continuing to pursue their claim in the United States in what they hoped would be a more advantageous forum. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1031 (2021) (noting that jurisdiction had been found improper where "the plaintiffs were engaged in forum-shopping"). Plaintiffs' maneuvering demonstrates a lack of interest in obtaining convenient and effective relief and undercuts any claim that the assertion of personal jurisdiction over Citivic in this Court would be reasonable.

## CONCLUSION

Because Plaintiffs' Fourth Amended Complaint fails to provide "any basis to demonstrate that [this Court] would have [] personal jurisdiction" over Citivic, the Court should grant the instant motion to dismiss Citivic for lack of personal jurisdiction. *See Spiegel v. Schulman*, 604 F.3d 72, 78 (2d Cir. 2010).


Dated: October 29, 2021
    New York, New York

CLEARY GOTTLIEB STEEN & HAMILTON LLP


By: */s/ Carmine D. Boccuzzi, Jr*
    Carmine D. Boccuzzi, Jr.
    E. Pascale Bibi
    One Liberty Plaza
    New York, New York  10006
    T: 212-225-2000
    F: 212-225-3999
    cboccuzzi@cgsh.com

    *Attorneys for Citivic Nominees Limited*