UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>FAIRFIELD SENTRY LIMITED, et al.,<br><br>Debtor in Foreign Proceedings. | Chapter 15 Case<br><br>Case No. 10-13164 (CGM)<br><br>Jointly Administered |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THEODOOR GGC AMSTERDAM, et al.,<br><br>Defendants. | Adv. Pro. No. 10-03496 (CGM)<br><br>Administratively Consolidated |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ZURICH CAPITAL MARKETS COMPANY, et al.,<br><br>Defendants. | Adv. Pro. No. 10-03634 (CGM) |

**MEMORANDUM OF LAW IN SUPPORT OF MERRILL LYNCH BANK (SUISSE) S.A.'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
UNDER RULE 12(B)(2)**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ..................................................................................................................... 7

ARGUMENT ........................................................................................................................ 10

    A.    MLBS's Alleged Contacts With The Forum Are Insufficient To Establish
Personal Jurisdiction ............................................................................................... 11

        1.    The Complaint's Vague, Hypothetical Allegations Do Not
Establish Personal Jurisdiction over MLBS ............................................ 12

        2.    The Fund's Investment In BLMIS Does Not Establish Personal
Jurisdiction Over MLBS ......................................................................... 13

        3.    The Use Of U.S. Currency and Designation of U.S. Accounts to
Receive Redemption Payments Do Not Establish Personal
Jurisdiction ............................................................................................. 17

    B.    The Exercise Of Personal Jurisdiction Over MLBS Would Be
Unreasonable ............................................................................................................ 22

CONCLUSION ..................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*,
  2021 WL 1178216 (S.D.N.Y. Mar. 29, 2021) ........................................................................13

*Al Rushaid v. Pictet & Cie*,
  68 N.E. 3d 1 (N.Y. 2016) .................................................................................................19, 21

*Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal.*,
  480 U.S. 102 (1987) ..................................................................................................... *passim*

*Berdeaux v. OneCoin Ltd.*,
  2021 WL 4267693 (S.D.N.Y. Sept. 20, 2021) .....................................................................13

*Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cty.*,
  137 S. Ct. 1773 (2017) ..........................................................................................................3, 12

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ...............................................................................................................11

*In re Caisse*,
  568 B.R. 6 (Bankr. S.D.N.Y. 2017) (Bernstein, J.) ..............................................................18

*Charles Schwab Corp. v. Bank of Am. Corp.*,
  883 F.3d 68 (2d Cir. 2018) .....................................................................................................11

*In re CIL Limited*,
  582 B.R. 46 (Bankr. S.D.N.Y. 2018) .....................................................................................22

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ...............................................................................................................11

*Fairfield Sentry Limited v. Zurich Cap. Mkts. Co.*,
  No. 650315/2010 (Aug. 13, 2010) ...........................................................................................8

*In re Fairfield Sentry Ltd.*,
  458 B.R. 665 (S.D.N.Y. 2011) (Preska, J.) ........................................................................6, 24

*In re Fairfield Sentry Ltd.*,
  627 B.R. 546 (Bankr. S.D.N.Y. 2021) (Morris, C.J.) ...........................................................15

*In re Fairfield Sentry Ltd. ("Fairfield I")*,
  2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) .........................................................3, 10

*Fairfield Sentry Ltd. (In Liquidation), et al. v. Citco Glob. Custody NV, et al.*,
  Adv. Pro. No. 19-01122 (Bankr. S.D.N.Y. Nov. 26, 2019)....................................19

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
  141 S. Ct. 1017 (2021) .........................................................................................24

*Hau Yin To v. HSBC Holdings PLC*,
  2017 WL 816136 (S.D.N.Y Mar. 1, 2017), *aff'd*, 700 F. App'x 66 (2d Cir.
  2017) .................................................................................................................19, 21

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
  466 U.S. 408 (1984)................................................................................15, 16, 17, 18

*Hill v. HSBC Bank plc*,
  207 F. Supp. 3d 333 (S.D.N.Y. 2016).......................................................................21

*HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*,
  2021 WL 918556 (S.D.N.Y. Mar. 10, 2021) ...........................................................13

*Int'l Shoe v. Washington*,
  326 U.S. 310 (1945)..................................................................................................22

*J. McIntyre Mach., Ltd. v. Nicastro*,
  564 U.S. 873 (2011)..................................................................................................16

*Jesner v. Arab Bank, PLC*,
  138 S. Ct. 1386 (2018)..............................................................................................19

*Koehler v. Bank of Berm. Ltd.*,
  101 F.3d 863 (2d Cir. 1996)......................................................................................10

*Langenberg v. Sofair*,
  2006 WL 2628348 (S.D.N.Y. Sept. 11, 2006)..........................................................10

*Lehigh Val. Indus., Inc. v. Birenbaum*,
  527 F.2d 87 (2d Cir. 1975)........................................................................................13

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
  732 F.3d 161 (2d Cir. 2013)......................................................................................20

*Mashreqbank PSC v. Ahmed Hamad Al Gosaibi & Bros. Co.*,
  12 N.E.3d 456 (N.Y. 2014).......................................................................................20

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
  84 F.3d 560 (2d Cir. 1996)........................................................................................23

*In re Mexican Gov't Bonds Antitrust Litig.*,
  2020 WL 7046837 (S.D.N.Y. Nov. 30, 2020)..........................................................16

*Picard v. Bureau of Labor Insurance (In re Securities Investor Protection Corp.)*,
480 B.R. 501 (Bankr. S.D.N.Y. 2012) ..................................................................16

*Porina v. Marward Shipping Co.*,
2006 WL 2465819 (S.D.N.Y. Aug. 24, 2006) ........................................................22

*Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
2016 WL 6900689 (Bankr. S.D.N.Y. Nov. 22, 2016) ............................................7

*Rush v. Savchuk*,
444 U.S. 320 (1980) ...............................................................................................13

*Sonterra Cap. Master Fund Ltd. v. Credit Suisse Grp. AG*,
277 F.Supp.3d 521 (S.D.N.Y. 2017) ......................................................................10

*Spiegel v. Schulman*,
604 F.3d 72 (2d Cir. 2010) .....................................................................................25

*SPV Osus Ltd. v. UBS AG*,
882 F.3d 333 (2d Cir. 2018) ..............................................................................14, 21

*Sunward Elec., Inc. v. McDonald*,
362 F.3d 17 (2d Cir. 2004) .....................................................................................10

*Tamam v. Fransabank Sal*,
677 F. Supp. 2d 720 (S.D.N.Y. 2010) ...............................................................19, 21

*In re Terrorist Attacks on September 11, 2001*,
714 F.3d 659 (2d Cir. 2013) ...................................................................................11

*Thorsen v. Sons of Norway*,
996 F. Supp. 2d 143 (E.D.N.Y. 2014) ....................................................................23

*Universal Trading & Inv. Co. v. Tymoshenko*,
2012 WL 6186471 (S.D.N.Y. Dec. 12, 2012) ........................................................20

*Vasquez v. Hong Kong & Shanghai Banking Corp., Ltd.*,
477 F. Supp. 3d 241 (S.D.N.Y. 2020) ....................................................................20

*Walden v. Fiore*,
571 U.S. 277 (2014) ...................................................................................... *passim*

*Waldman v. Palestine Liberation Org.*,
835 F.3d 317 (2d Cir. 2016) ..............................................................................10, 11

*World-Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286 (1980) ...............................................................................................22

**Rules**

Federal Rule of Civil Procedure 12(b)(2) .......................................................................................1

Defendant Merrill Lynch Bank (Suisse) S.A. ("MLBS"), improperly named as Merrill Lynch Bank in this adversary proceeding, by and through its undersigned counsel, submits this memorandum of law in support of its motion to dismiss the Fourth Amended Complaint ("Complaint" or "Compl.", Dkt. No. 313) filed by Plaintiffs Kenneth M. Krys and Greig Mitchell solely in their capacities as the liquidators of Fairfield Sentry Ltd. ("Sentry" or the "Fund")[1] under Federal Rule of Civil Procedure 12(b)(2).

## PRELIMINARY STATEMENT

The Complaint asserts a very narrow claim against MLBS for knowing receipt under British Virgin Islands ("BVI") law.  Knowing receipt is a specific claim that permits a BVI court to unwind a transfer for equitable reasons.  Plaintiffs' knowing receipt claim against MLBS is based entirely on the allegation that Defendant Zurich Capital Markets Company ("Zurich Capital") received redemption payments from the Fund and that Zurich Capital "may have" paid "some or all" of these payments to an "account holder or holders associated with" MLBS. Compl. ¶¶ 49, 251.[2]  The Complaint similarly alleges that redemption payments "may have" been paid to 22 other defendants, and makes no attempt to explain or identify what transfers were made to what defendants.  The Complaint makes no jurisdictional allegations about the redemption payments that "may have" been paid to MLBS – such as where MLBS received them, their amounts, or the dates when they were received – nor is there any allegation that MLBS even entered into an agreement with Zurich Capital to subscribe for the underlying shares.  Plaintiffs' handful of non-specific, hypothetical, and conclusory allegations, which are

---

[1] Plaintiffs bring this action only on behalf of Sentry, not Fairfield Sigma Limited or Fairfield Lambda Limited, and thus this motion refers to only Sentry as the "Fund." *See* Compl. ¶¶ 1, 26, 243; *see also id*. ¶¶ 20-23, 41.

[2] For the Court's convenience, the Fourth Amended Complaint is attached to the notice of motion. Unless otherwise noted, references to "Dkt. ___" refer to *Fairfield Sentry Ltd. (In Liquidation) v. Zurich Capital Markets Co*., Adv. Pro. No. 10-03634 (Bankr. S.D.N.Y.).

made against Zurich Capital and all named and unnamed "beneficial shareholders" as a group, are insufficient to establish that the Court has personal jurisdiction over MLBS with respect to this claim.

Plaintiffs ask this Court to effectively sit as a BVI Court of equity to adjudicate whether MLBS must return redemption payments it received from the Funds. But Plaintiffs have not established that this Court has personal jurisdiction over MLBS, because every relevant and material aspect of the claim is foreign:

- MLBS is a foreign entity with its principal place of business and place of incorporation in Switzerland. *Id*. ¶ 49.

- Plaintiffs allege no relevant activities by MLBS in or directed at the United States.

- Zurich Capital, as the initial transferee of the redemption payments allegedly transferred to MLBS, is a foreign entity with its principal place of business and place of incorporation in Ireland. *Id*. ¶ 32.

- The Fund is a British Virgin Islands ("BVI") hedge fund that is now in liquidation in its home jurisdiction of the BVI. *Id*. ¶ 26.

- Zurich Capital was contractually due the redemption under the Fund's Articles of Association (the "Articles"), corporate documents governed by BVI law. *See id.*

- The Articles provide a BVI contractual right to redeem shares in the Fund at its Net Asset Value ("NAV") when the shares were tendered to the Fund's Dutch administrator, Citco Fund Services (Europe) B.V. ("Citco Fund Services" or the "Citco Administrator"). ¶ 59.

- Citco Fund Services, which is alleged to have calculated the NAV, is located in the Netherlands. ¶ 200.

Indeed, Plaintiffs have previously agreed that their claims are purely foreign. In July 2021, in connection with their pending appeal seeking reinstatement of certain dismissed claims, Plaintiffs told the District Court:

> ***The redemption transfers at issue here were purely foreign***. The Citco Administrator (a foreign entity) managed the share register and processed the redemption requests abroad, and the Funds (also foreign entities) transferred redemption payments to Defendants (also chiefly foreign entities). . . . As

> Defendants concede (Omnibus Bankr. Dkt. 1457 at 19), *every relevant component of the transactions at issue here occurred outside the territorial jurisdiction of the United States.*

Pls'-Appellants' Opening Br. for Second-Round Appeal at 24, *Fairfield Sentry Ltd. v. Citibank NA London*, No. 19-cv-3911 (S.D.N.Y. July 21, 2021), Dkt. No. 440 (emphasis added).

Plaintiffs' failure to allege that their claim arises out of or relates to MLI conduct in New York precludes the exercise of specific jurisdiction under Supreme Court precedent. *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017) (concluding that to establish specific jurisdiction that "the suit must arise out of or relate to the defendant's contacts with the forum."). As the *Bristol-Myers* court explained, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." 137 S. Ct. at 1780 (citation and internal quotation marks omitted). The redemption transactions at issue have no connection to this forum, and Plaintiffs' sole claim against MLI does not arise out of any MLI conduct in New York.

Nonetheless, for almost a decade, Plaintiffs have cast about looking for a jurisdictional hook in the United States. Plaintiffs initially filed their foreign claim before this Court because they incorrectly construed the subscription agreement for the purchase of shares in the Fund as containing a New York forum selection clause for their claim against Zurich Capital and the beneficial shareholders it might represent.[3] This Court rejected that theory because the knowing receipt claim is solely based on redemptions and does not arise out of the subscription agreement. *In re Fairfield Sentry Ltd. ("Fairfield I")*, 2018 WL 3756343, at *11 (Bankr. S.D.N.Y. Aug. 6,

---

[3] MLBS was not party to that subscription agreement but Plaintiffs have included it based on a provision of the subscription agreement by which Zurich Capital, if "subscribing as trustee, agent, representative or nominee for another person . . . agrees that the representations and agreements herein are made by [Zurich Capital] with respect to itself and the Beneficial Shareholder." Compl. ¶ 24.

2018) ("[T]he Privy Council held that the Subscription Agreement was irrelevant to actions to recover the inflated redemption payments."). As Judge Bernstein noted at oral argument:

> It just sounds like you litigated these issues or you should litigate them in the BVI. I don't understand why they're here. . . . [A]t some point you commenced these cases here. . . . And the question is why you didn't commence them in the BVI.

Tr. of July 27, 2016 Hr'g. at 11-14, *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, Adv. Pro. No. 10-3496 (Bankr. S.D.N.Y. July 28, 2016) (Dkt. 906).

Perhaps cognizant that their only allegation against MLBS is that it "may have" received redemption payments from Zurich Capital, Compl. ¶ 49, Plaintiffs attempt to group MLBS with Zurich Capital and all named and unnamed beneficial shareholders to allege that if "Zurich Capital and the Beneficial Shareholders" did receive such redemption payments, they did so through "United States-based and/or New York-based accounts," *id*. ¶ 20. But the Complaint provides no basis for this allegation against MLBS, and it lists a New York account *only* in connection with transfers from the Fund to Zurich Capital. *Id*. ¶ 67; Ex. A. Such vague group pleading cannot be used to circumvent Plaintiffs' burden of establishing personal jurisdiction over MLBS. Nor should Plaintiffs be permitted to embark upon a fishing expedition through jurisdictional discovery based on the thin allegation that a defendant "may have" been involved in suit-related conduct in the hopes that something will turn up to cure their pleading deficiency.

In addition to these pleading deficiencies, the Complaint also fails to plead facts sufficient to establish personal jurisdiction over MLBS because each of its purported bases for personal jurisdiction fails.

*First*, Plaintiffs have argued that the Due Process Clause's minimum contacts requirement is satisfied because MLBS knew that Zurich Capital was investing with the Fund and knew, in turn, that the Fund was directly or indirectly investing its own money in Bernard L. Madoff Investment Securities LLC ("BLMIS"). But this argument is not relevant to Plaintiffs'

4

knowing receipt claim, which does not turn on the initial investment with the Fund but rather is
based on redemption payments from the Fund and the allegations of Citco Fund Services' bad
faith calculation of those payments in the Netherlands.  *See* Compl. ¶¶ 8-9, 17.  Plaintiffs' claim
is not about, and does not arise out of, any investment with BLMIS.  Even if the Fund's
investment with BLMIS were relevant, however, those investments – not made by MLBS – are
not the sort of minimum contacts that would support personal jurisdiction over MLBS.  As the
Supreme Court's decision in *Walden v. Fiore*, 571 U.S. 277 (2014) establishes, a defendant's
knowledge of the *plaintiff's* contacts with the forum – here, the Fund's contacts with BLMIS – is
insufficient to establish personal jurisdiction.

 *Second*, Plaintiffs allege that minimum contacts is satisfied because "Zurich Capital and
the Beneficial Shareholders . . . maintain[ed] bank accounts in the United States at Citibank NA,
and in fact receiv[ed] Redemption Payments in those United States-based and/or New York-
based accounts."  Compl. ¶ 20.  Plaintiffs' conclusory allegation grouping MLBS with Zurich
Capital and other alleged beneficial shareholders cannot establish minimum contacts.  Indeed,
the Complaint only identifies a New York-based Citibank NA bank account where *Zurich
Capital* supposedly received redemption payments from the Fund, not MLBS.  Compl. ¶ 65-67.
The location and nature of Zurich Capital's bank account – whether a correspondent bank
account or otherwise – has no bearing on jurisdiction over MLBS.

 *Finally*, even if minimum contacts were satisfied, exercising jurisdiction would be
unreasonable under the circumstances and is therefore impermissible.  The majority (if not all) of
relevant records are overseas in the BVI, Switzerland, or the Netherlands where the Fund's
administrator is alleged to have calculated the NAV.  The United States has little to no interest in
adjudicating this foreign law claim between foreign parties for the recovery of purely foreign

payments under a foreign law contract. The federal court system only has subject-matter jurisdiction over the case because the claim is related to a Chapter 15 ancillary case that Plaintiffs filed solely for the purpose of forum-shopping. *See, e.g., In re Fairfield Sentry Ltd.*, 458 B.R. 665, 686 (S.D.N.Y. 2011) (Preska, J.) ("The purpose of a Chapter 15 case is to aid foreign jurisdictions in administering bankruptcies by preventing debtors from squirreling away assets in the United States. It is not to take over as the center stage for the proceedings. The cases under the same legal theories could have been (and were) brought in the BVI proceedings.") (internal citations omitted).[4] After the Privy Council, the court of last resort in the BVI, affirmed dismissal of the liquidators' BVI law claims in 2014, Plaintiffs discontinued the remaining BVI actions beginning in 2016 and began prosecuting the New York actions under a new theory.[5] Even Plaintiffs' interest in litigating in this forum is low. They have proffered no reason why the United States is more reasonable than their home jurisdiction of the BVI or MLBS's home jurisdiction of Switzerland. Finally, the burden on MLBS litigating in New York is significant. The witnesses and records in this action are all overseas, and MLBS has obligations under foreign law. Discovery in these actions may potentially expose MLBS to civil and criminal penalties in its home jurisdiction.

For these reasons, MLBS should be dismissed from the action for lack of personal jurisdiction.

---

[4] *See also In re Fairfield Sentry Ltd.*, 458 B.R. at 677 ("Nowhere in the complaints, Plaintiffs' papers, Defendants' papers, or at oral argument can there be found a nonfrivolous reference to any assets sought that are located within the territorial jurisdiction of the United States or in possession of a U.S. domiciled defendant.").

[5] In the BVI courts, the liquidators unsuccessfully litigated on a "mistaken" payment theory, premised on the Fund's alleged miscalculation of their NAV. The liquidators lost those claims at all levels of the BVI court system. *See Fairfield Sentry Ltd. (in Liquidation) v. Migani* [2014] UKPC 9 ¶ 23 (concluding the Liquidators' approach is "an impossible construction"). They also lost on their claim that redeeming investors did not give good consideration for the redemptions. *See generally id.*

## BACKGROUND

Zurich Capital is alleged to have invested in Sentry, a "feeder fund" for BLMIS. Compl.

¶¶ 2-3, 16.  The Fund, which is organized under BVI law, sold shares to foreign investors in

accordance with its Articles of Association (the "Articles").  To purchase shares in the Fund,

certain investors were required to sign subscription agreements.  *Id*. ¶ 22.  The Complaint alleges

that Zurich—but not MLBS—entered into a subscription agreement with the Fund.  *Id*.  The

terms of the investments, including the redemption rights, were not governed by the subscription

agreements, but by the Articles.  *See Sec. Inv 'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,

2016 WL 6900689, at *15 (Bankr. S.D.N.Y. Nov. 22, 2016) ("[T]he Privy Council in *Fairfield

Sentry* ruled that the redemptions were governed by the Articles of Association and BVI law.").

The Articles granted investors the right to redeem their shares at a price equal to the Fund's

NAV, which was calculated based on the value of the Fund divided by its outstanding shares.

Compl. ¶ 8.  The Fund's NAV was calculated by its administrator, Citco Fund Services (Europe)

B.V. and its delegate Citco (Canada) Inc. (together, "Citco"), which issued NAV statements to

shareholders on behalf of the Fund.  *Id*. ¶¶ 60, 200.  Following a redemption request, the Fund

was required to pay Zurich an amount based on the NAV in return for the redemption of the

shares.  *Id*. ¶¶ 8, 245. The Complaint alleges that Zurich received redemption payments totaling

approximately $15.1 million between April 21, 2004 and August 14, 2006.  *Id*. ¶ 66.

In December 2008, BLMIS's fraud was revealed, and in April 2009 the Fund entered

liquidation proceedings before the BVI High Court of Justice, Commercial Division.  *Id*. ¶¶ 26,

231-37.  Between October 2009 and March 2010, Plaintiffs commenced actions in the BVI

against a number of the Fund's alleged investors seeking restitution on the theory that the Fund

mistakenly made redemption payments prior to BLMIS's collapse, and contemporaneously, and

since, have brought more than 300 actions in the United States against a partially overlapping

group of defendants with overlapping theories of liability.

Plaintiffs initiated this action in New York state court on August 13, 2010 and removed

to this Court on September 21, 2010. The original complaint named as defendants Zurich

Capital, MLBS, thirteen other defendants, and 1,000 unnamed "beneficial owners" of Zurich

Capital. Dkt. No. 1-2. It sought recovery of redemption payments that Zurich Capital allegedly

received from the Fund before December 2008 totaling $13.4 million. Plaintiffs amended the

complaint several times, first on January 10, 2011, again on August 7, 2012, again on January 9,

2020, and again on August 11, 2021.[6] Despite these amendments, Plaintiffs' complaint has

never provided any additional detail regarding any specific transfer to MLBS. *See, e.g.*, Dkt. No.

4 ¶ 40 ("Upon information and belief, Zurich *may have paid* to or credited some or all of the

Redemptions Payments received by it to accounts of Beneficial Shareholders.") (emphasis

added). Plaintiffs' claim against MLBS continues to rest entirely on speculation that it "may

have" received payments from Zurich Capital.[7]

---

[6] The operative complaint is entitled the "Fourth Amended Complaint," but constitutes the fifth amendment
following Plaintiffs' original filing of the case in state court on August 13, 2010. *See* Compl., *Fairfield Sentry
Limited v. Zurich Cap. Mkts. Co*., No. 650315/2010 (Aug. 13, 2010), NYSCEF Doc. No. 4; Am. Compl. (Sept. 21,
2010), Dkt. No. 4; First Am. Compl. (Jan. 10, 2011), Dkt. No. 42; Second Corr. Am. Compl. (Aug. 7, 2012), Dkt.
No. 64; Third Am. Compl. (Jan. 9, 2020), Dkt. No. 237; ZCM Fourth Am. Compl. (Aug. 11, 2021), Dkt. No. 313.
[7] MLBS first moved to dismiss for lack of personal jurisdiction in 2017. *See, e.g.*, Consolidated Mem. of Law in
Opp'n to Pls' Mot. for Leave to Amend and in Supp. of Defs' Mot. to Dismiss, *Fairfield Sentry Ltd. v. Theodoor
GGC Amsterdam*, Adv. Pro. No. 10-3496 (Bankr. S.D.N.Y. Jan. 13, 2017), Dkt. No. 960. Because of the stay and
other procedural orders entered during this litigation by Judges Lifland and Bernstein, that was the first opportunity
for MLBS to challenge personal jurisdiction. Those 2017 motions have never been fully resolved, and since 2017
there have been a number of stipulations and orders preserving the defense. *See, e.g.*, Order and Stipulation ¶ 3,
*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, Adv. Pro. No. 10-3496 (Bankr. S.D.N.Y. Sept. 20, 2018), Dkt.
No. 1735; Stipulated Order Granting in Part and Denying in Part Moving Defendants' Motions to Dismiss and
Plaintiffs' Motions to Amend ¶ II.A, *Fairfield Sentry Ltd. v. Zurich Capital Markets, et al.*, Adv. Pro. No. 10-3634
(Bankr. S.D.N.Y. Apr. 18, 2019), Dkt. No. 224; Stipulated Order Granting in Part and Denying in Part Defendants'
Second Consolidated Motion to Dismiss ¶ II.1, *Fairfield Sentry Ltd. v. Zurich Capital Markets, et al.*, Adv. Pro. No.
10-3634 (Bankr. S.D.N.Y. Feb. 26, 2021), Dkt. No. 287; Scheduling Order ¶ 4, *Fairfield Sentry Ltd. v. Theodoor
GGC Amsterdam*, Adv. Pro. No. 10-3496 (Bankr. S.D.N.Y. Mar. 20, 2020), Dkt. No. 2926; Stipulation and
[Proposed] Order Regarding Deadline to Respond to Complaint, *Fairfield Sentry Ltd. v. Zurich Capital Markets, et
al.*, Adv. Pro. No. 10-3634 (Bankr. S.D.N.Y. Oct. 25, 2021), Dkt. No. 336.

Now on its fifth iteration, the Fourth Amended Complaint has failed to advance beyond its 2010 personal jurisdiction allegations against MLBS. *See* Compl. ¶¶ 49, 65-67. The Complaint makes nearly identical boilerplate allegations against MLBS and 22 other alleged beneficial owners in Zurich. *See e.g., id.* ¶¶ 33-55. While the Complaint alleges that Zurich received payments totaling approximately $15.1 million, *id.* ¶ 66, it does not provide any information about what portion of those transfers were made to any of the alleged beneficial owners, including MLBS. It does not plead any specific transfer received by MLBS – not a single sum, not a single date. Indeed, the Fourth Amended Complaint continues to plead: "Upon information and belief, Zurich Capital *may have paid* some or all of the Redemption Payments it received to the Beneficial Shareholders." *Id.* ¶ 251 (emphasis added). Its "new" personal jurisdiction allegations provide no further substance:

- "Zurich Capital and the Beneficial Shareholders purposely availed themselves of the laws of the United States and the State of New York by, among other things, investing money with the Funds, knowing and intending that the Funds would invest substantially all of that money in New York-based BLMIS, and maintaining bank accounts in the United States at Citibank NA, and in fact receiving Redemption Payments in those United States-based and/or New York-based accounts." *Id.* ¶ 20.[8]

- "Zurich Capital and the Beneficial Shareholders selected U.S. dollars as the currency in which to invest and execute their transactions in Sentry, designated United States-based and/or New York-based bank accounts to receive their Redemption Payments from the Funds, and actively directed Redemption Payments at issue in this action into those bank accounts." *Id.*

- "Zurich Capital and the Beneficial Shareholders thus knowingly accepted the rights, benefits, and privileges of conducting business and/or transactions in the United States and New York, derived significant revenue from New York, and maintained minimum contacts and/or general business contacts with the United States and New York in connection with the claim alleged herein. Zurich Capital and the Beneficial

---

[8] Plaintiffs also add a new allegation, in a footnote to an exhibit, that Citco, the Fund's administrator, maintained a correspondent account. *See* Compl., Ex. A ("Whether or not Redemption Payments were ultimately directed to bank accounts in the United States, all Redemption Payments from Sentry went through a correspondent bank account that Sentry's administrator [Citco] maintained in the United States.").

Shareholders should therefore reasonably expect to be subject to United States jurisdiction." *Id.*

- "[T]his Court has jurisdiction over Zurich Capital and any Beneficial Shareholders by virtue of the legally binding and valid agreements and representations set forth in one or more agreements for the subscription of Shares that Zurich Capital entered into with Sentry." *Id.* ¶ 21. As discussed supra, this basis for personal jurisdiction was rejected in *Fairfield I.*

- "Based on Sentry records, some or all of the Redemption Payments made to Zurich Capital may have been paid to an account holder or holders associated with the Beneficial Shareholder, Merrill Lynch Bank ("Merrill Lynch"). Upon information and belief, Merrill Lynch is a corporate entity organized under the laws of Switzerland and has its registered address at 13 Route de Florissant, Geneva, CH-1211, Switzerland." *Id.* ¶ 49.

- The redemption payments from Sentry were sent to Zurich Capital's bank account in New York. *Id.*, Ex. A.

None of these statements, individually or collectively, comes close to alleging personal jurisdiction over MLBS.

## ARGUMENT

As this Court previously held, MLBS did not consent to in personam jurisdiction in this Court. *See Fairfield I*, 2018 WL 3756343, at *12. Accordingly, Plaintiffs must identify some basis other than consent to carry their "burden of establishing jurisdiction over the defendant." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 334 (2d Cir. 2016) (quoting *Koehler v. Bank of Berm. Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996)). Plaintiffs must make their personal jurisdiction showing with respect to "*each defendant*," *Langenberg v. Sofair*, 2006 WL 2628348, at *6 (S.D.N.Y. Sept. 11, 2006), and to the specific claim asserted in the action, *see Sonterra Cap. Master Fund Ltd. v. Credit Suisse Grp. AG*, 277 F.Supp.3d 521, 586 (S.D.N.Y. 2017) (citing *Sunward Elec., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004)). At the motion to dismiss stage, Plaintiffs have the pleading burden and "must make a prima facie showing that

jurisdiction exists" consistent with due process. *Charles Schwab Corp. v. Bank of Am. Corp.*,
883 F.3d 68, 81 (2d Cir. 2018) (internal quotation marks omitted).

Plaintiffs do not allege that the Court has general jurisdiction over MLBS, who is not "at
home" in the United States, and so Plaintiffs must plead facts supporting the exercise of specific
jurisdiction over it. *See Daimler AG v. Bauman*, 571 U.S. 117, 136-37 (2014). To do so,
Plaintiffs must assert that (1) their claim arises out of the MLBS's sufficient "minimum contacts
with the relevant forum," and (2) "the exercise of jurisdiction is reasonable in the
circumstances." *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 673 (2d Cir.
2013) (internal quotation marks omitted). The minimum contacts inquiry focuses on "the
relationship among the defendant, the forum, and the litigation," a relationship that "must arise
out of contacts that the defendant himself creates with the forum State." *Walden*, 571 U.S. at
284 (internal quotation marks omitted). Plaintiffs have failed to meet this pleading burden.

## A.      MLBS's Alleged Contacts With The Forum Are Insufficient To Establish Personal Jurisdiction

Plaintiffs neither allege "minimum contacts" sufficient to constitute a "substantial
connection" between MLBS and the United States, nor do they establish that MLBS engaged in
conduct "purposefully directed" toward the forum to support the exercise of specific personal
jurisdiction. *Waldman,* 835 F.3d at 338. Moreover, Plaintiffs' only remaining claim – a claim
for constructive trust arising from knowing receipt under BVI law – does not "arise out of or
relate to" conduct in the United States. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73
(1985).

The sole conduct relevant to Plaintiffs' remaining constructive trust claim is Zurich
Capital's receipt of redemptions from the BVI-based feeder fund Sentry. Compl. ¶¶ 243-55. But
those redemption payments were indisputably made by a *foreign* fund through its *foreign*

administrator pursuant to *foreign*-law governed contracts.  *See id*. ¶¶ 8, 200, 204.  Nor did the

Fund or its administrator make any of those redemption payments to MLBS.  Accordingly,

Zurich Capital's alleged "suit-related conduct" – the knowing receipt of those redemptions –

unambiguously fails to create "a substantial connection with the forum State" and MLBS,

especially where Plaintiffs fail to allege that MLBS received payments from the Fund.  *Walden*,

571 U.S. at 284; *see also Bristol-Myers Squibb v. Super. Ct. of Cal*., 137 S. Ct. 1773, 1781

(2017) (declining to exercise personal jurisdiction where "[w]hat is missing . . . is a connection

between the forum and *the specific claims at issue*") (emphasis added).  In the absence of this

requisite connection, Plaintiffs strain to conjure relevant U.S. contacts sufficient to support

jurisdiction.  Their efforts fail.

1.    **The Complaint's Vague, Hypothetical Allegations Do Not Establish Personal
Jurisdiction over MLBS**

Plaintiffs allege that MLBS, which is not alleged to have received transfers from the

Fund or its foreign administrator, is liable in this case exclusively on the basis that an "*some or

all* of the Redemption Payments made to Zurich Capital," which is itself foreign, "*may have* been

paid to an account holder or holders associated with" MLBS.  Compl. ¶¶ 49.  The only potential

connection with New York is a vague allegation grouping MLBS with Zurich Capital and other

alleged beneficial shareholders and asserting that they all received the payments in "United

States-based and/or New York-based accounts."  *Id*. ¶ 20.  Yet the Complaint only identifies a

New York-based Citibank NA bank account where *Zurich Capital* supposedly received

redemption payments from the Fund, and alleges no connection between that account and

MLBS.  *Id*. ¶ 67.  There is no attempt to even plead how that bank account – owned by Zurich

Capital – is connected to MLBS, nor do Plaintiffs allege MLBS used that account.  Plaintiffs

plead no connection between MLBS and the United States with respect to the purported

payments that "may have" occurred.  Compl. ¶¶ 49, 251.  Such "bland assertion[s] . . . [are]
insufficient to establish jurisdiction" where there "are no allegations of specific facts which
would connect [MLBS] with any New York activity."  *Lehigh Val. Indus., Inc. v. Birenbaum*,
527 F.2d 87, 93-94 (2d Cir. 1975).

Plaintiffs' blatant effort to lump all of the beneficial owners together with Zurich is
equally inappropriate.  *See, e.g.*, Compl. ¶ 20.  "To allege personal jurisdiction over a defendant,
group pleading is not permitted."  *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 2021
WL 1178216, at *12 (S.D.N.Y. Mar. 29, 2021); *see also Rush v. Savchuk*, 444 U.S. 320, 332
(1980) (plaintiff must allege a basis for jurisdiction with respect to *each defendant*).  Plaintiffs
must make specific jurisdictional allegations against MLBS in order to sustain a basis for
jurisdiction against MLBS.  *See, e.g.*, *Berdeaux v. OneCoin Ltd.*, 2021 WL 4267693, at *7, 11
(S.D.N.Y. Sept. 20, 2021) (dismissing complaint for lack of personal jurisdiction because
plaintiff's group pleading that defendants "oversaw the transfers of fraud proceeds through banks
that 'do business' in New York" failed to "establish a prima facie case of personal jurisdiction
against *each* Defendant as to *each* claim asserted") (emphasis in original); *HSM Holdings, LLC
v. Mantu I.M. Mobile Ltd.*, 2021 WL 918556, at *15 (S.D.N.Y. Mar. 10, 2021) ("In relying only
on group pleadings, in which it conflates multiple parties and fails to provide specific allegations,
Plaintiff neglects its burden of establishing personal jurisdiction over each defendant.").

### 2.    The Fund's Investment In BLMIS Does Not Establish Personal Jurisdiction Over MLBS

Plaintiffs do not plead that MLBS purposefully availed itself of New York.  The closest
they come is the conclusory contention that as a beneficial shareholder of Zurich Capital, MLBS
invested with the Fund while purportedly "knowing and intending that the Funds would invest
substantially all of [its] money" in BLMIS in New York.  Compl. ¶ 20.  The Complaint does not

explain how MLBS could possibly have directed Zurich Capital to invest in the Fund and then

directed the Fund, with whom MLBS had no contractual relationship, to invest in MLBIS. But

even if it could be said that MLBS knew and intended its investment with *Zurich Capital* to lead

to the *Fund's* investment in BLMIS, the allegation is irrelevant. Plaintiffs' knowing receipt

claim is not predicated on the funds ever having been placed with or controlled by BLMIS. Nor

does that claim focus on the decision to invest with the Fund as the basis for either liability or

jurisdiction. Rather, the claim is predicated *solely* on Zurich Capital having requested and

*received* money from the Fund. Plaintiffs do not allege that those redemption requests were

executed in the United States or that the conduct underlying their claim occurred or resulted in

injuries in the United States. Nor could they. Plaintiffs' claim for knowing receipt relates to and

arises out of the allegedly mistaken calculation of the NAV by the Fund's foreign administrator,

Citco, and the Fund's subsequent disbursement of redemption payments abroad on the basis of

those calculations. *See id*. ¶¶ 200, 224, 242, 253.

The allegation that the Fund used the proceeds of sales of its own securities to fund its

own investments with BLMIS does not establish personal jurisdiction – even if MLBS somehow

knew it planned to do so. The Fund is not alleged to have been an agent of Zurich Capital or

MLBS, and the money invested with BLMIS is not alleged to belong to MLBS. Personal

jurisdiction must be premised on the *defendant's* conduct, not that of third parties. "The

'substantial connection' between the defendant and the forum State necessary for a finding of

minimum contacts must come about by *an action of the defendant purposefully directed toward

the forum State." Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal*., 480 U.S. 102, 112 (1987)

(emphasis in original); *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 344 (2d Cir. 2018) (whether

personal jurisdiction lies "depends on the relationship among the defendant, the forum, and the

14

litigation") (internal quotation marks omitted) (emphasis added); *In re Fairfield Sentry Ltd.*, 627

B.R. 546, 566 (Bankr. S.D.N.Y. 2021) (Morris, C.J.) (requiring plaintiff to plead that the

*defendant* created the substantial connection to the forum to satisfy the purposeful availment

prong).[9]

The Supreme Court has "consistently rejected attempts to satisfy this defendant-focused

'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third-parties)

and the forum State." *Walden*, 571 U.S. at 284.  In *Walden*, a Nevada-based plaintiff sued a

Georgia police officer in Nevada court for an unlawful seizure of money in a Georgia airport.

571 U.S. at 288.  The police officer knew that the plaintiff had connections to Nevada and that

the seizure would delay return of plaintiff's property to Nevada, but the Supreme Court

nonetheless held it unconstitutional to exercise personal jurisdiction over the police officer in

Nevada.  *Id.* at 289.  As the Supreme Court explained, the foreseeability of *plaintiff's* connection

to the forum is irrelevant to whether there is jurisdiction over *defendant* because it

"impermissibly allows a plaintiff's contacts with the defendant and forum to drive the

jurisdictional analysis."  *Id.  See also Asahi*, 480 U.S. at 112 ("The substantial connection . . .

between the defendant and the forum State necessary for a finding of minimum contacts must

come about by *an action of the defendant purposefully directed toward the forum State*.")

(citation and quotation omitted) (emphasis in original); *see also Helicopteros Nacionales de

Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) ("[The] unilateral activity of another party or a

third person is not an appropriate consideration when determining whether a defendant has

---

[9] The connections between the United States and MLBS are far more attenuated than defendants in other suits
involving BLMIS feeder funds in which the court has held that it has personal jurisdiction over those defendants.
For example, the defendants in *In re Fairfield Sentry Limited*, who actually managed the Fund, were alleged to have
performed risk management for the Fund in New York, regularly spoken to BLMIS, shared offices with the Fund"
New York headquarters, attended Fund meetings in New York, or have formed equivalent contacts with the United
States. *In re Fairfield Sentry Ltd.*, 627 B.R. at 566-69. There are no such allegations here linking the conduct of
MLBS to the forum state.

sufficient contacts with a forum State to justify an assertion of jurisdiction."). Thus the *Fund's* investment in New York-based BLMIS is not a basis for personal jurisdiction over *MLBS*, who is concededly thrice removed from that investment. *See Helicopteros Nacionales de Colombia, S.A.* 466 U.S. at 417 ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction.").

In any event, the allegation that money placed with the Fund may have – but did not necessarily[10] – make its way to BLMIS is not a basis for asserting personal jurisdiction; it is nothing more than the type of "stream of commerce" theory of personal jurisdiction rejected by the Supreme Court. *See J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 882 (2011) ("[I]t is not enough that [a] defendant might have predicted that its goods will reach the forum," but rather must "engage[] in conduct purposefully directed at [the forum]"); *In re Mexican Gov't Bonds Antitrust Litig.*, 2020 WL 7046837, at *3-4 (S.D.N.Y. Nov. 30, 2020) (holding that neither an attempt to profit from conduct underlying the claim nor the foreseeability of a harm in the forum could establish jurisdiction in the absence of a defendant's contact with the forum).

Notably, this case is very different from *Picard v. Bureau of Labor Insurance (In re Securities Investor Protection Corp.)*, 480 B.R. 501 (Bankr. S.D.N.Y. 2012) ("*BLI*"), in which Judge Lifland held that a defendant's investment with the Fund was sufficient to establish personal jurisdiction *with respect to claims arising from the liquidation of BLMIS*. The allegations in *BLI* concerned transfers to the defendant by BLMIS from New York, and the court held that the defendant's decision to invest in a fund that would ultimately invest with Madoff gave rise to personal jurisdiction with respect to claims arising from that *Madoff* investment. But

---

[10] *See, e.g.*, Compl. ¶ 62 (alleging that the redemption payments also comprised "subscription monies from other investors in the Fund" and were "used as a shortcut to investing subscription monies with BLMIS").

16

Plaintiffs' claim in this case does not arise from the Madoff investment; it arises from the

redemption payments made by the Fund from the BVI to Zurich Capital and then allegedly from

Zurich Capital to MLBS.  Most importantly, two years after *BLI*, the Supreme Court decided

*Walden*, which undermines the holding in *BLI*.  571 U.S. at 284 ("contacts between the plaintiff

(or third-parties) and the forum State" insufficient to establish personal jurisdiction).  As with the

officer in *Walden*, it is not credible that MLBS would have understood itself to be submitting to

U.S. jurisdiction with respect to BVI claims related to foreign-based Zurich Capital and foreign-

based Sentry, and finding personal jurisdiction under these circumstances is inconsistent with the

Supreme Court's precedent in *Walden*.

### 3. The Use Of U.S. Currency and Designation of U.S. Accounts to Receive Redemption Payments Do Not Establish Personal Jurisdiction

Plaintiffs also allege that minimum contacts are established because Zurich Capital and

its beneficial shareholders "selected U.S. dollars as the currency in which to invest and execute

their transactions in Sentry" and "designated United States-based bank accounts to receive their

Redemption Payments from the Funds and actively directed Redemption Payments . . . into those

bank accounts."  Compl. ¶ 20.

The Complaint does not allege that MLBS selected U.S. dollars as the "Base Currency"

for payments to investors.  Indeed, it was the *Fund*, not MLBS, that made that designation.  *See*

Dkt. No. 81-6 (Sentry Articles, arts. 1, 10(1)(c) (defining "Base Currency" as "the currency of

the United States of America" and stating "payment shall be made to the Applicant in the Base

Currency in respect of the redemption or purchase of Shares")).[11]  As explained above, the

---

[11] Plaintiffs submitted the Articles with the Declaration of William Hare in support of their motion for leave to file an amended complaint. *See* Dkt. No. 81-6. Plaintiffs also quote directly from the Articles in their Complaint. *See* Compl. ¶¶ 79, 200; *see also id*. ¶¶ 59-60, 62, 78.  The fact that Citco – who is not alleged to have transferred any funds to MLBS – unilaterally may have chosen to use a correspondent account is irrelevant to whether the Court may exercise jurisdiction over MLBS, because jurisdiction must be based on the *defendant's* contacts with the forum, not the plaintiff's.  *See Walden*, 571 U.S. at 284; *Helicopteros*, 466 U.S. at 417.  The facts of where Citco

Fund's decisions and acts cannot serve as the predicate for personal jurisdiction over MLBS.
See *Walden*, 571 U.S. at 284; *Helicopteros*, 466 U.S. at 417.

As for the alleged use of U.S. bank accounts, the Complaint does not identify a single
U.S. bank account that received redemption payments for MLBS. This shortfall alone is a basis
to deny personal jurisdiction as to MLBS. To be sure, the Complaint identifies a New York-
based Citibank NA account where Zurich Capital supposedly received redemption payments
from the Fund, but says nothing about where MLBS received any transfers. *Id.* ¶ 67. Nor does
the Complaint allege that Zurich Capital used this New York account to transfer funds to MLBS.
And even if it did, the nature of Zurich Capital's bank account – whether a correspondent bank
account or otherwise – is irrelevant to jurisdiction over MLBS because jurisdiction is based on
the "contacts that the defendant himself creates with the forum State," and not by others.
*Walden*, 571 U.S. at 284 (citation and internal quotation marks omitted).

In a footnote to an exhibit to the Complaint, Plaintiffs argue that defendants who *did not*
receive payments into U.S.-based accounts can nonetheless be subject to personal jurisdiction
because – Plaintiffs assume – those payments *may* have traveled through U.S.-based
correspondent accounts on their way to defendants' foreign accounts. *See* Compl., Ex. A
("Whether or not Redemption Payments were ultimately directed to bank accounts in the United
States, all Redemption Payments from Sentry went through a correspondent bank account that
Sentry's administrator [Citco] maintained in the United States, and to the extent that any such
Redemption Payments were directed outside the United States, they went through a
correspondent bank account in the United States identified by shareholders for such payments.").

---

received redemption payments from Sentry itself are not "peculiarly within the possession and control of the
defendant" MLBS or "based on factual information that makes the inference of culpability plausible." *In re Caisse*,
568 B.R. 6, 13 n.5 (Bankr. S.D.N.Y. 2017) (Bernstein, J.) (internal quotation marks omitted). Nor are these
allegations "accompanied by a statement of the facts upon which the belief is founded." *Id.*

The first two clauses of this allegation speak to *foreign third-party Citco's* purported contact

with the forum, and have no nexus to Plaintiffs' claim against MLBS.[12]  Plaintiffs also do not

allege that MLBS was involved in the selection of this alleged correspondent account by the

Fund's administrator.  Even if taken as true, this incidental and non-purposeful conduct does not

establish personal jurisdiction in this Circuit.

Exhibit A's conclusory allegation that beneficial shareholders "identified" U.S.

correspondent bank accounts fares no better.  Even if the Complaint alleged that MLBS accepted

certain redemption payments into a U.S. bank account—and it does not—the mere receipt of

funds into a bank account is not sufficient to support personal jurisdiction where the account is

maintained "merely to ensure compliance with contract terms negotiated and executed outside of

[the forum.]" *Hau Yin To v. HSBC Holdings PLC*, 2017 WL 816136, at *5 (S.D.N.Y. Mar. 1,

2017), *aff'd*, 700 F. App'x 66 (2d Cir. 2017).  "Courts in this district have routinely held that

merely maintaining a New York correspondent bank account is insufficient to subject a foreign

bank to personal jurisdiction," *Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 727 (S.D.N.Y.

2010) (citing cases); *see also Al Rushaid v. Pictet & Cie*, 68 N.E. 3d 1, 16-17 (N.Y. 2016)

(confirming that "coincidental" use of a correspondent account is an insufficient jurisdictional

basis), as foreign banks conducting business in the United States typically maintain accounts at

U.S. banks simply to effect dollar transactions.  *See generally Jesner v. Arab Bank, PLC*, 138 S.

Ct. 1386, 1395 (2018) ("In New York each day, on average, about 440,000 [dollar-clearing]

transfers occur, in dollar amounts totaling about $1.5 trillion.").

---

[12] Moreover, Plaintiffs fail to corroborate this allegation in their action against Citco, where they plead Citco's use of these U.S.-based bank accounts "on information and belief."  Citco Am. Compl. ¶ 19, *Fairfield Sentry Ltd. (In Liquidation), et al. v. Citco Glob. Custody NV, et al.*, Adv. Pro. No. 19-01122 (Bankr. S.D.N.Y. Nov. 26, 2019).

The redemption payments at issue indisputably went from one foreign party to another to another; the origin and destination of the funds were abroad. As such, the parties to these transactions never expected this technicality to land their dispute in U.S. court. Were the incidental use of U.S.-based accounts sufficient to confer personal jurisdiction over foreign entities, New York would become a clearinghouse for any foreign commercial dispute, merely because global transactions are frequently cleared in U.S. dollars. *See Mashreqbank PSC v. Ahmed Hamad Al Gosaibi & Bros. Co.*, 12 N.E.3d 456, 459-60 (N.Y. 2014) ("Our state's interest in the integrity of its banks . . . is not significantly threatened every time one foreign national, effecting what is alleged to be a fraudulent transaction, moves dollars through a bank in New York."); *Universal Trading & Inv. Co. v. Tymoshenko*, 2012 WL 6186471, at *3 (S.D.N.Y. Dec. 12, 2012) ("[C]ourts have long recognized that there are significant policy reasons which caution against the exercise of personal jurisdiction based only on . . . a correspondent bank account.").

Accordingly, rather than rely simply on the maintenance of a correspondent account, courts in this Circuit typically assess both the frequency and deliberateness with which the accounts were used, neither of which supports conferring jurisdiction here. *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013) (noting that the New York Court of Appeals found that "the frequency and deliberate nature" of the use of correspondent accounts is determinative of whether personal jurisdiction lies); *see also Vasquez v. Hong Kong & Shanghai Banking Corp., Ltd.*, 477 F. Supp. 3d 241, 255-58 (S.D.N.Y. 2020) (finding that foreign banks' use of correspondent accounts was insufficiently deliberate to subject it to personal jurisdiction).

Plaintiff do not allege that such accounts were (1) frequently used (or used at all by MLBS), or (2) in any way necessary to the alleged fraud. Correspondent accounts which process

20

U.S. dollar transactions are available in countries around the world.  *See Tamam*, 677 F. Supp. 2d at 729 (noting that foreign entities can leverage U.S. dollar correspondent accounts throughout Europe, Asia, and Africa).  Because the use of any such accounts would be "merely incidental" to decisions made abroad and "not specifically directed by any of the [] entities to facilitate the Ponzi scheme," *Hau Yin To*, 2017 WL 816136, at *7 n.6, these alleged contacts are insufficient to establish personal jurisdiction over MLBS.  *See id.* (rejecting personal jurisdiction over foreign defendants because their alleged connection to the forum was the transmission of funds "to and from BLMIS . . .[as an] incidental consequence[] of fulfilling a foreign contract"); *see also SPV*, 882 F.3d at 345 (finding a "handful of communications and transfer of funds . . . are insufficient to allow the exercise of specific personal jurisdiction over the [Foreign] Defendants"); *Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333, 339-40 (S.D.N.Y. 2016) (finding the transmission of information and funds to and from BLMIS to be "incidental consequences of fulfilling a foreign contract . . . insufficient to 'project' the Foreign Defendants into New York" and do "not amount to 'purposeful availment' of the laws of" the forum).

Even if the selection of the Base Currency and the incidental payments into U.S.-based accounts could establish the requisite connection to the forum, Plaintiffs' claim does not arise out of or relate to that conduct.  Both alleged bases for jurisdiction were incidental results of decisions made by the Fund pursuant to a foreign-law governed contract executed abroad.  *See Hau Yin To*, 2017 WL 816136, at *7 n.6; *Al Rushaid*, 68 N.E.3d at 11.  Because the Fund's purported injuries were entirely unrelated to the choice of the currency used or the accounts in which investments were received, this Court cannot exercise personal jurisdiction over MLBS. *See Walden*, 571 U.S. at 284.

**B.      The Exercise Of Personal Jurisdiction Over MLBS Would Be Unreasonable**

Compounding the absence of sufficient minimum contacts with the forum or their

connection to the Plaintiffs' claim, the Court's exercise of personal jurisdiction over MLBS

would be unreasonable and contrary to "traditional notions of fair play and substantial justice."

*Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945).  "The Due Process Clause . . . gives a degree

of predictability to the legal system that allows potential defendants to structure their primary

conduct with some minimum assurance as to where that conduct will and will not render them

liable to suit."  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (citation

omitted).  Here, where MLBS's purported contacts with the United States arose from actions that

were taken by foreign entities on foreign soil pursuant to foreign contracts, its conduct and

connection with the forum are not such that it should have "reasonably anticipate[d] being haled

into court."  *Id*.  The inequity of exercising personal jurisdiction over MLBS here is particularly

blatant as Plaintiffs can take advantage of an alternative forum in the BVI (and have done so,

albeit unsuccessfully).

In evaluating the reasonableness of exercising personal jurisdiction, "[a] court must

consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest

in obtaining relief."  *Asahi*, 480 U.S. at 113-14.  "[T]he weaker the plaintiff's showing on

minimum contacts, the less a defendant needs to show in terms of unreasonableness to defeat

jurisdiction."  *In re CIL Limited*, 582 B.R. 46, 79 (Bankr. S.D.N.Y. 2018) (citation omitted); *see

also Porina v. Marward Shipping Co.*, 2006 WL 2465819, at *6 (S.D.N.Y. Aug. 24, 2006) ("[I]f

a defendant's contacts with the United States are weak, the plaintiff has to make a stronger

showing of reasonableness in order to show that jurisdiction over the defendant is proper.").

Each of the *Asahi* factors weighs against exercising personal jurisdiction here.

22

*First*, defending Plaintiffs' actions before this Court would impose substantial burdens on

MLBS, as "none of its records, files, or witnesses with information about the litigation are

located" in the United States. *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 574

(2d Cir. 1996). This holds true despite the availability of modern technology, which might

reduce this burden, but does not eliminate it. *See id.* ("[T]his factor cuts slightly in favor of the

defendant"); *Thorsen v. Sons of Norway*, 996 F. Supp. 2d 143, 159 (E.D.N.Y. 2014) (finding the

burden of traveling to New York had diminished in the modern age but was still an "important

factor"). Moreover, MLBS hales from Switzerland where discovery of such documents would

potentially expose it to civil or criminal liability.[13] After Judge Preska directed this Court to

perform a comity analysis before deciding whether to proceed with discovery in this action, this

Court held that a conflict existed between U.S. discovery and Swiss law. It found that "yielding

to [Plaintiffs'] Disclosure Request implicate[d] the significant bank customer confidentiality

laws of no fewer than 30 countries," including Switzerland, and that "the competing interests of

the nations whose laws are in conflicting . . . militate[d] heavily in favor of" defendants. Bench

Ruling Granting in Part and Denying in Part the Foreign Representatives Motion Seeking

Limited Relief, *Fairfield Sentry Ltd, v. Theodoor GGC Amsterdam*, Adv. Pro. No. 10-3496

(Bankr. S.D.N.Y. July 19, 2012), Dkt. No. 799-2 (Lifland, J.).

*Second*, the United States' lesser interest in adjudicating disputes between foreign parties

arising under *foreign* law further cautions against exercising jurisdiction. *Asahi*, 480 U.S. at 114-

15. Had Plaintiffs not filed a petition for Chapter 15 recognition, there would be no subject

---

[13] For example, Articles 162 and 273 of the Swiss Criminal Code, Article 47 of the Swiss Federal Act on Banks and
Savings Banks, and related ordinances and regulations, impose professional data secrecy obligations on Swiss
banks; Article 271 of the Swiss Criminal Code prevents an official act from being performed on behalf of a foreign
authority on Swiss soil, including the collection of evidence located in Switzerland that is intended for use in a U.S.
proceeding; and the Swiss Federal Act on Data Protection of June 19, 1992, Article 328b of the Swiss Code of
Obligations, and related ordinances and regulations, restrict the disclosure of information relating to any identified
or identifiable natural person.

matter jurisdiction in federal court over this claim for what is essentially a private dispute between foreign parties. *In re Fairfield Sentry Ltd.* , 458 B.R. at 685 ("[T]hese claims are disputes between two private parties that have existed for centuries and are 'made of the stuff of the traditional actions at common law tried by the courts at Westminster in 1789.'") (citation omitted). The claim for knowing receipt is itself non-core and there are no alleged debtor assets in the United States. *Id.* at 682 ("Here, there are no assets in the United States. Plaintiffs' actions seek assets, so their location is relevant. Plaintiffs do not seek discovery or stays of proceedings in the United States. Thus, the ancillary character of the Chapter 15 cases here is at a low ebb—it is certainly not within the core jurisdiction of the bankruptcy court to aid the BVI courts in these cases because there are no assets sought in the United States.") (emphasis added). The Supreme Court has cautioned against finding jurisdiction over such a claim between foreign parties arising under foreign law. *See Asahi*, 480 U.S. at 115 ("Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field.").

*Finally*, Plaintiffs have not demonstrated that it is more convenient for them to litigate their claim against MLBS in New York rather than in the BVI. *See id.* at 114. Indeed, Plaintiffs initially chose the BVI as the preferable and most convenient forum to pursue their claim. Only upon losing at the highest level in the BVI court system did Plaintiffs then discontinue their suits in that forum, instead pursuing their claim in the United States in what they hoped would be a more advantageous forum. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1031 (2021) (noting that jurisdiction had been found improper where "the plaintiffs were engaged in forum-shopping"). Plaintiffs' maneuvering demonstrates a lack of interest in obtaining convenient and effective relief and undercuts any claim that the assertion of personal jurisdiction over MLBS in this Court would be reasonable.

24

## CONCLUSION

Because Plaintiffs' Fourth Amended Complaint fails to provide "any basis to demonstrate that [this Court] would have [] personal jurisdiction" over MLBS, the Court should grant the instant motion to dismiss MLBS for lack of personal jurisdiction. *See Spiegel v. Schulman*, 604 F.3d 72, 78 (2d Cir. 2010).

Dated: November 15, 2021    Respectfully submitted,

New York, New York     O'MELVENY & MYERS LLP

              By: /s/ *Pamela A. Miller*
              Pamela A. Miller
              O'MELVENY & MYERS LLP
              Seven Times Square
              New York, New York 10036
              Telephone: (212) 326-2000
              E-mail: pmiller@omm.com

              *Attorneys for Merrill Lynch Bank (Suisse),*
              *S.A., improperly named as Merrill Lynch*
              *Bank*